**In re the Marriage of Cynthia L. BALOGH, petitioner, Appellant,**

v.

**James A. BALOGH, Respondent.**

**No. CO–83–1566.**

Court of Appeals of Minnesota.

Sept. 25, 1984.

Jack S. Jaycox, Reidenberg & Jaycox, Bloomington, for appellant.

Alan C. Eidsness, Sarah McKenzie, Henson & Efron, P.A., Minneapolis, for respondent.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from a judgment and decree of dissolution. Respondent has also appealed and sought review of the trial court.

## FACTS

The parties to this proceeding, Cynthia and James Balogh, were married for eleven years and have one child. At the time of their divorce, James Balogh was a partner in the law firm of Messerli, Roe, Balogh & Kramer and owned his partnership units by means of a corporate body known as James A. Balogh, Ltd. He also owned and managed an eight-unit apartment building known as Illyricun Properties, and was a 20 percent shareholder of a corporation known as Burgundy Properties, Inc.—a corporation which managed apartment complexes. Cynthia Balogh was unemployed at the time of the divorce, although she had previously worked as a teacher and a salesperson.

After hearing testimony concerning the ownership and value of the property of the Baloghs, the trial court divided their assets as follows:

| Item | Respondent | Appellant |
|------|-----------|-----------|
| Homestead | | $ 90,000 |
| Illyricun Properties | $184,000 | |
| Automobiles | 17,000 | 7,000 |
| IRA | 6,220 | |
| Law Partnership interest | 128,000 | |
| Burgundy Properties, Inc. | 45,000 | |
| Cash from Respondent (Payable at $10,000 per year without interest) | | 40,000 |
| Subtotal | $380,220 | $137,000 |

| Item | Respondent | Appellant |
|------|-----------|-----------|
| Less Liabilities | | |
| First National Bank | $155,167 | |
| Tax Liability – James A. Balogh, Ltd. | 57,500 | |
| Cash to Appellant | 40,000 | |
| Total Deductions | (252,667) | |
| Net Amounts ............... | $127,553 | $137,000 |

The appellant disputes the trial court's valuation of the homestead, and argues that the court should not have considered the potential future tax liability of James A. Balogh, Ltd. The respondent contests the valuation of his law partnership interest and the value assigned to Burgundy Properties, Inc.

## ISSUES

1. Did the trial court assign an improper value to the parties' homestead?

2. Did the trial court improperly consider the future tax liability of James A. Balogh, Ltd.?

3. Did the trial court assign an improper value to respondent's law partnership interest?

4. Did the trial court assign an improper value to Burgundy Properties, Inc.?

## ANALYSIS

**1. Homestead.**

■ The trial court determined that the parties' homestead had a net equity of $90,000.00. The appellant argues that the trial court should have reserved jurisdiction on this issue because the homestead had been put on the market for sale and because its value was uncertain. We disagree. There is always some difficulty in appraising real estate. Appellant's reasoning that a lack of certainty in the exact value of homestead necessitates reserving jurisdiction would be true in almost all marital dissolutions.

■ In the instant case, the respondent submitted a document from a professional appraiser which indicated that the homestead was worth $202,000.00, and which

would leave a net equity of $92,000.00, although there was testimony that the appellant had received private offers of $167,000 and $150,000. The market value determined by the trial court is within limits of credible estimates by competent witnesses. In *Lammi v. Lammi*, 348 N.W.2d 372, 374 (Minn.Ct.App.1984) this court said:

> An appellate court will not overturn the trial court's valuation of assets unless they [sic] are clearly erroneous. Minn.R. Civ.P. 52.01 (1984); *Hertz v. Hertz*, 304 Minn. 144, 229 N.W.2d 42 (1975). "(T)he market valuation determined by the trier of fact should be sustained if it falls within the limits of credible estimates made by competent witnesses ...." *Id.* at 145, 229 N.W.2d at 44.

We conclude that the court did not abuse its discretion in valuing the homestead equity at $90,000.

### 2. Tax Considerations.

As noted above, the respondent's interest in his law partnership was actually owned by a personal service corporation which he had formed, entitled James A. Balogh, Ltd. At least one of the reasons this corporation was formed was to defer taxes on partnership income to the following corporate tax year. In 1982, however, Congress enacted IRC § 269A, giving the Internal Revenue Service the authority to prevent this method of tax deferral where:

> (1) substantially all of the services of a personal service corporation are performed for (or on behalf of) 1 other corporation, partnership, or other entity, and
>
> (2) the principal purpose for forming, or availing of, such personal service corporation is the avoidance or evasion of Federal income tax by reducing the income of, or securing the benefits of any expense, deduction, credit, exclusion, or other allowance for, any employee-owner which would not otherwise be available
> * * *

26 U.S.C.A. § 269A (1982). As a result of this tax change, the respondent's accountant testified that the respondent would not be able to continue his present practice of channeling income through his personal service corporation. Because of certain tax relief in IRC § 333, respondent's accountant testified that it would be to the respondent's advantage to liquidate James A. Balogh, Ltd. in 1983 or 1984. He also testified that liquidation under this procedure would result in a tax liability in the amount of $57,504.00.

Testimony by the accountants for both parties indicated that the principal purpose of James A. Balogh, Ltd. was to defer respondent's income. The trial court determined that the new tax law would affect this deferral and, relying upon the testimony at trial, concluded that the respondent's likely tax liability of $57,504.00 should be considered in the division of the parties' property. Specifically, the court found:

> The Respondent's 19.84 percent [partnership] interest * * * is held by a professional corporation known as James A. Balogh, Ltd. of which the Respondent is the sole shareholder. Said corporation was formed by the Respondent in 1980 for tax purposes and has resulted in significant tax savings which has enabled the parties to enjoy a higher standard of living than if they would have paid income taxes commensurate with the Respondent's actual earnings.
>
> Pursuant to a law passed by Congress in 1982, the Respondent will have to liquidate said corporation in 1983 or 1984. If the liquidation occurs in 1983, the Respondent will incur an additional income tax of $57,500.00. This tax liability is appropriately considered as a marital debt for purposes of the property distribution herein.

Where tax consequences are not speculative or conjectural, a trial court has the discretion to consider them in making a property division, and its decision should not be overruled, absent abuse. *O'Brien v. O'Brien*, 343 N.W.2d 850 (Minn.1984); *Aaron v. Aaron*, 281 N.W.2d 150 (Minn. 1979). As stated in *Aaron:*

> [W]e have indicated that it is within the trial court's discretion to consider the tax

consequences of its award, but such considerations are not controlling.

\* \* \* \* \* \*

We do not hold that in a proper case, where sale of real estate is required or is likely to occur within a short time after the dissolution, that the court should not consider tax consequences—indeed it should.

*Id.*, at 153. Similarly, in the present instance where liquidation was likely to occur within a short time in response to federal statutory changes the trial court's consideration of the tax implications was not improper.

### 3. Law partnership.

The partnership agreement for Messerlie, Roe, Balogh and Kramer provided in relevant part:

ARTICLE 24.

PURCHASE PRICE AND PAYMENT

24.1) In the case of a partner owning 2,500 partnership units, the purchase price in the event of *death, normal retirement or full disability* shall be:

a.  2½ times annual draw as defined by the average of the three highest years in the preceeding ten years of the partnership.

b.  The purchase price shall be payable without interest in 60 equal monthly installments, commencing two months after the effective date of purchase.  \* \* \*

c.  In addition, a pro-rata share of profit or loss based on the date of death or disability payable at the time of distribution of profit or loss to all partners for the fiscal year in which said partner died or became disabled.

24.2) In the case of a partner owning 2,500 partnership units, the purchase price in the event of *termination of his interest and retirement from the private practice of law in the State of Minnesota prior to normal retirement age,* the purchase price shall be:

a.  One times the previous fiscal year's draw paid to said partner or the partner's capital account on December 31 of the previous year, whichever is greater.

b.  The purchase price shall be payable in 24 equal monthly installments commencing two months after termination.

c.  In addition, a pro rata share of profit or loss for fiscal year as determined by the date of termination of his interest or retirement from the private practice of law in the State of Minnesota payable at the time of distribution of profit or loss to all partners.

24.3) In the case of a partner owning 2,500 units, the purchase price in the event of *termination of his interest and said partner's continuation in the private practice of law in the State of Minnesota,* the purchase price shall be:

a.  The partner's capital account as computed on December 31st of the previous year or the partner's previous years draw, whichever is less.

b.  The purchase price shall be payable in 24 equal monthly installments commencing two months after termination.

There were thus three methods of computing the value of the respondent's interest in the partnership, dependent upon certain contingencies.  Both parties' experts testified at trial that the provisions in the partnership agreement should control when determining the value of the respondent's interest in the partnership.

The trial court, utilizing only the provisions of paragraph 24.1 of the agreement, and using figures from the past several years, determined that the respondent's interest in the partnership amounted to approximately $128,000.00.  The respondent challenges this conclusion, claiming that the trial court erred (1) by only considering one of the three alternative methods of computation and (2) by not reducing the $128,000.00 to present value figures.

The trial court computed the respondent's interest in the partnership based upon provision 24.1 in the agreement,

which provided for payment in the event of death, normal retirement or full disability. The court did not consider the alternative methods of computation set forth in sections 24.2 and 24.3 of the agreement, which provided for payment in the event of a partner's early retirement or resignation from the firm to practice elsewhere. It is undisputed that if these alternative methods of computation are used, the "value" of the respondent's interest would be much less. The respondent argues that the trial court erred by arbitrarily choosing one method of calculation under the agreement and excluding the others. The trial court's method of valuation "is to be affirmed if it has an acceptable basis in fact and principle even though this court may have taken a different approach." *Castonguay v. Castonguay*, 306 N.W.2d 143, 147 (Minn. 1981), citing *Bollenbach v. Bollenbach*, 285 Minn. 418, 175 N.W.2d 148 (1970).

Despite this limited scope of review, we find that the trial court's method of computation was arbitrary, and that there was no basis in fact for the court's method of valuation. The trial court gave no reason for its apparent conclusion that death, disability or normal retirement were more likely to occur than the respondent's early retirement or practice elsewhere. Indeed, the respondent was never questioned concerning his future plans or the likelihood of early versus normal retirement. On the other hand, the respondent's expert submitted a schedule which weighed the likelihood of the various contingencies addressed by the three methods of computation in the partnership agreement. The respondent's expert concluded that the likelihood of normal retirement, death, or disability was 25%, the likelihood of early retirement was 5%, and the likelihood of termination to practice elsewhere was 70%. Although the trial court clearly had the discretion to ignore these figures, there is no evidence in the record to support its conclusion that the first of these contingencies was the most likely to occur.

The situation in this instance is similar to that in *Janssen v. Janssen*, 331 N.W.2d 752 (Minn.1983), where the court considered the proper valuation of a nonvested unmatured pension. At the time of trial in *Janssen*, the husband's pension was worth only $100 for every year of completed service if he terminated his employment prematurely, but worth much more if he retired at a normal age. Thus, as in the present situation, the right which the husband held in a property interest could be valued at different figures, depending upon the husband's actions in the future. After concluding that a nonvested pension met the definition of "marital property" since it was not specifically excluded by statute, the court concluded that the parties' interest in the pension should have been divided at the time of the dissolution, but the future benefits ordered apportioned "only if and when such benefits are paid." *Janssen*, at 756. The court cited as authority *In re Marriage of Hunt*, 78 Ill.App.3d 653, 663, 34 Ill.Dec. 55, 397 N.E.2d 511, 519 (1979), which recommended such a method where it would be difficult to place a value on the interest "due to uncertainties regarding vesting or maturation * * *." Likewise, in the present situation where the husband's future plans could not have been known to either the parties or the court, it appears that the court should have either adopted the *Janssen* method of distribution or relied upon expert testimony concerning the likelihood of the various contingencies addressed by the partnership agreement.

## 4. Burgundy Properties.

Finally, the respondent contests the value which the trial court assigned to his interest in the corporation known as Burgundy Properties. There was testimony that the respondent owned a 20 percent interest in that subchapter S corporation which managed real estate investments, that the other shareholders of the corporation were the three other senior partners of the respondent's law firm, and that the corporation was a way for one of the partners to contribute income to the partnership. The respondent's expert, based upon

testimony of the respondent and another senior partner concerning the organization of the corporation, testified that the corporation should be viewed as an income source only, and that its only other value would be its book value of $16,405. When divided by 20 percent and discounted to reflect one partner's key interest, respondent's expert concluded that the respondent's interest in the corporation amounted to $1,640.00.

The appellant's expert, however, valued the respondent's interest in the corporation at between $90,000.00 and $170,000.00. He obtained these figures by utilizing three methods of capitalization of the investment, taking into consideration the past distributions of the corporation.

The trial court appears to have simply taken the appellant's figure of $1,640.00 and the respondent's figure of $90,000.00 and arrived at a figure of $45,-000.00—halfway in between. While this approach might be fair when there is no great disparity in figures submitted by two opposing experts, in this instance the range between one thousand and ninety thousand dollars is substantial. Particularly troubling in this instance is the fact that the trial court made no findings which might tend to demonstrate why or how he arrived at this middle figure—thus it appears that the decision to use the $45,000.00 figure was purely arbitrary.

It has been stated that exactitude is not required in the valuation of assets, *Johnson v. Johnson,* 277 N.W.2d 208, 211 (Minn.1979), although the court's figure must lie "within a reasonable range of figures." *Id.* In other words, "the market valuation determined by the trier of fact should be sustained if it falls within the limits of credible estimates made by competent witnesses even if it does not coincide exactly with the estimate of any one of them." *Hertz v. Hertz,* 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975).

In *Ronnkvist v. Ronnkvist,* 331 N.W.2d 764, 766 (Minn.1983) the court indicated:

While we have often stated that trial courts are accorded broad discretion in both the valuation and distribution of an asset, exercise of that discretion is not unlimited and should be supported by either clear documentary or testimonial evidence or by comprehensive findings issued by the court.

Thus, in *Rogers v. Rogers,* 296 N.W.2d 849 (Minn.1980) and *Roberson v. Roberson,* 296 Minn. 476, 206 N.W.2d 347 (1973), where the court gave no explanation for its findings and the appellate court could not determine upon what basis it valued a party's interest, the appellate court remanded for reconsideration and more specific findings.

## DECISION

The findings of the trial court as to the value of the homestead property and the future tax liability of respondent's personal service corporation are affirmed, and the findings of the trial court as to the value of respondent's interest in his law partnership and the value of Burgundy Properties are reversed for further proceedings in accordance with this opinion.