In re the Marriage of Karen Faye
NOVICK, petitioner, Appellant,

v.

Michael Herbert NOVICK, Respondent.

No. C3–84–1216.

Court of Appeals of Minnesota.

April 16, 1985.

Gerald Singer, Meshbesher, Singer & Spence, Minneapolis, for petitioner, appellant.

Robert Henson, Henson & Efron, Minneapolis, for respondent.

Heard, considered, and decided by HUSPENI, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

HUSPENI, Judge.

Wife appeals from the amended dissolution decree, contending the trial court erred in disposing of assets, in allocating indebtedness, and in awarding insufficient child support and spousal maintenance. Husband seeks review of the property valuation and the award of attorney's fees to wife. We affirm.

## FACTS

Karen and Michael Novick were married in August 1962. A judgment and decree of dissolution was entered April 11, 1984.

The parties have three children, whose ages were 19, 16, and 13 at the time of trial. Sixteen-year old Wendy is mentally retarded. She attends St. Louis Park High School, participating in a special education program. Thirteen-year old David receives counseling for emotional difficulties. Karen was granted custody of the children.

Michael provided Karen with living expenses for the interim between separation and the issuance of the temporary support order. From March 1982 until November 1982, his monthly payments fluctuated between $900 and $1,800. The temporary order provided for $700 in child support and $1,800 in spousal maintenance to be paid to Karen each month.

Karen's parents have "loaned" her $59,-000 since the parties separated in March of 1982. These claimed "loans" are undocumented, unsecured, and without interest. The trial court disregarded the characterization of the transfers as "loans" and determined them to be gifts.

Michael is the controlling shareholder (62.4%) and a securities broker for a privately-held brokerage firm, M.H. Novick and Co. (Novick Co.). Michael valued his interest in the company at $310,801, under the assumption that he, a key employee, may leave the company and open a competing business. The figure represents the book value of Michael's stock, minus a 20% discount. Karen valued the company at $515,600—discounting Michael's stock 30% for lack of marketability, then adding a 50% premium for control of the company. The trial court modified the control premium and valued the stock at $429,713. Michael's average income is $140,000 a year.

Karen attended college for 1½ years. She has held a variety of jobs, including

receptionist and interior designer. She earned $1,500 in 1983 as a part-time employee at B. Dalton.

In the dissolution decree, spousal maintenance was set at $2,000 a month for the first two years, commencing May 1984, and $1,000 per month for the next three years. Child support was set at $2,000 a month. The applicable child support guidelines would have required $3,500 a month.

The property was divided equally—approximately $280,000 to each party. The homestead, valued at $158,000 and subject to a $10,798 mortgage, was awarded to Karen. The Novick Co. interest was awarded to Michael. A Bear, Stearns Co. trading account, valued at $81,301, was divided equally between the parties.

The amended decree, entered May 23, 1984, did not alter the support or maintenance requirements or the property division. It did, however, order Michael to pay $23,000 of Karen's attorney's fees.

### ISSUES

1. Did the trial court err in characterizing intra-family transactions as gifts rather than loans?

2. Did the trial court abuse its discretion in calculating husband's predicted 1983 tax liability into the total marital debts?

3. Did the trial court miscalculate the value of husband's interest in his company?

4. Did the trial court abuse its discretion in deviating downward from the applicable child support guidelines?

5. Did the trial court err in setting the spousal maintenance award?

6. Did the trial court abuse its discretion in awarding wife attorney's fees?

### ANALYSIS

#### STANDARD OF REVIEW

The standard of review for property settlements, child support, and spousal maintenance is very narrow. The trial court has broad discretion and will be reversed only for a clear abuse of discretion. *Bogen*

*v. Bogen*, 261 N.W.2d 606 (Minn.1977). If the trial court's determination has reasonable and acceptable basis in fact and principle, the reviewing court must affirm. *DuBois v. DuBois*, 335 N.W.2d 503 (Minn. 1983).

### I.

▮ Karen's parents gave her $3000 each month from the time the parties separated until the time of trial, for a total of $59,000. The trial court characterized these advancements as gifts. Karen contends that the court should have found that the transfers were loans and, as such, marital debts.

These "loans" were undocumented, unsecured, and without interest. Karen's father's deposition testimony reveals a long history of unrepaid intra-family debt. The record, therefore, supports the trial court's determination as to the nature of the advancements.

### II.

Karen claims that the trial court abused its discretion by including Michael's 1983 forecasted income tax liability in its tally of marital debts.

"Where tax consequences are not speculative or conjectural, a trial court has the discretion to consider them in making a property division and its decision should not be overruled, absent abuse." *Balogh v. Balogh*, 356 N.W.2d 307, 310 (Minn.Ct. App.1984).

▮ The tax liability prediction was based on expert testimony relating to current tax rates, Michael's gross income, and predicted tax deductions and exemptions. These tax consequences were not speculative, and were properly considered by the trial court.

▮ In the alternative, Karen contends the trial court should have forced Michael to sell certain securities in the Bear-Stearns account, at a loss, in order to minimize the $96,000 tax liability. Instead, the trial court divided the account in kind between the parties. In so doing, it, in fact, left to

each of the parties the decision of whether to sell the securities individually and thereby realize any tax benefits. We find no error in this determination.

### III.

■ Relying on *Rogers v. Rogers*, 296 N.W.2d 849 (Minn.1980), Michael claims that the trial court erred as a matter of law in valuing Novick Co. as it did. In *Rogers*, one of the methods used by the trial court in valuing the husband's interest in a closely held company took as its premise that the husband was a key man, without whom the company would be valueless. Husband's interest was valued on the assumption that he would remain in the company's employment. *Id.* at 851. The Minnesota Supreme Court rejected this valuation method, holding that "respondent is entitled to property acquired during the marriage, but she is not entitled to a lien on appellant himself." *Id.* at 853. The *Rogers* court went on to note:

It may be that the valuation found by the trial court reflects an independent analysis not influenced by the flaws we have noted. Unfortunately, however, the court provided no explanation of its findings, and we therefore do not know upon what basis it concluded that appellant's interest in RFA was worth $600,000. It is for this reason that we remand the case for reconsideration and more specific findings.

*Id.* at 853.

The *Rogers* court indicates that a valuation of a company which seems to take into account husband's "key man" status may be appropriate, given the proper analysis.

Here the trial court did not figure in Michael's salary and his expected stay with the company as the court impermissibly did in *Rogers*. The court simply valued Michael's stock at a higher rate because he has a controlling interest in the company. The court did not abuse its discretion in valuing Novick Co.

### IV.

The child support guidelines were revised by the 1984 legislature. Under the old guidelines, Michael would have paid $3,500 a month. Pursuant to the new guidelines, effective April 26, 1984, Michael's monthly child support payment would be $1,800. The trial court set child support at $2,000.

■ As a threshold matter, the parties are arguing as to which guidelines apply. The trial court applied the old guidelines which were still in effect April 11, 1984, the date the dissolution decree issued. Michael contends that the new guidelines are applicable because they were effective prior to the date of the amended decree, relying on *Hadrava v. Hadrava*, 357 N.W.2d 376 (Minn.Ct.App.1984).

The *Hadrava* court applied child support guidelines not in existence when the original support order issued, to a modification order. The court found that there is "no retroactive effect in an application of the guidelines to a modification order, provided the court first finds the substantial change in circumstances required for such an order." *Id.* at 379. Michael's reliance on *Hadrava* is misplaced.

■ Michael's argument that a motion for amended findings of fact is analogous to a motion for modification of support due to changed circumstances misses the essential difference between the two motions. A motion for modification allows the parties an opportunity to show the occurrence of changed circumstances since a prior support determination. A motion for amended findings is a motion which asks the court to reconsider the determination it made on the evidentiary record created at trial. Any remand for reconsideration of child support by this court would necessarily be limited to application of the statutory guidelines in existence at the time of the original decree. If we were to allow application of the new guidelines on remand, the effect would be retroactive application of a statute. Such a result is prohibited by Minn.Stat. § 645.21 (1984). Therefore, the trial court was correct in applying the old guidelines.

◼ The next question is whether the trial court abused its discretion in deviating downward ·from the child support guidelines.

A court may order child support in an amount below the guidelines if the court "makes express findings of fact as to the reason for the lower order." Minn.Stat. § 518.17, subd. 5 (Supp.1983). Factors which might appropriately be considered in determining such an award include: the financial resources and needs of the child and both parents, the standard of living the child would have enjoyed had the marriage not been dissolved, and the physical, emotional and educational needs of the child. Minn.Stat. § 518.17, subd. 4 (1984).

Here the trial court set child support at $2,000 a month, finding: "The child support allowances ordered deviate from the guidelines established by Minnesota Statutes § 518.551, subd. 5, by reason of the substantial nature of the property of the parties awarded to petitioner."

Karen was awarded substantial assets, with minimal offsetting liabilities. A substantial portion of those assets consists of investments and cash. Furthermore, although the new guidelines are not applicable here, we cannot blind ourselves to their existence. They reflect the legislative determination that the old guidelines led to inappropriately high awards in cases where the payor had substantial income. Under these circumstances, the trial court did not abuse its discretion in deviating downward from the applicable child support guidelines.

### V.

The trial court awarded Karen maintenance of $2,000 a month for two years and $1,000 monthly for an additional three years. Karen claims that the trial court abused its discretion because the maintenance is inadequate to allow her to undergo a period of training and education which would lead to self-sufficiency.

◼ The grounds for awarding maintenance and determining the amount are set forth in Minn.Stat. § 518.552 (1984). Although the statute lists seven factors to be considered in determining a maintenance award, the essential consideration is the financial need of the spouse receiving maintenance, and the ability to meet that need, balanced against the financial condition of the spouse providing the maintenance. *Krick v. Krick*, 349 N.W.2d 350 (Minn.Ct. App.1984).

Moreover, "A trial court has broad discretion with regard to maintenance. Its determination will be overturned only upon a clear abuse of discretion. Each case must be determined upon its own facts and no single statutory factor is dispositive in determining the type or amount of maintenance." *Leach v. Leach*, 356 N.W.2d 378, 379 (Minn.Ct.App.1984).

◼ Karen was awarded a substantial amount of property. The child support payments she receives are adequate. She has had 1½ years of college and has demonstrated an ability to hold down part time jobs. In light of these factors, we cannot say that the trial court abused its discretion in setting spousal maintenance.

### VI.

◼ Karen's total pre-appeal litigation expenses were $46,921. The trial court awarded her approximately ½ of this amount, $23,000, in the amended decree. Unquestionably, this award was generous. However, allowance of attorney's fees in dissolution cases rests almost entirely in the discretion of the trial court. An award should not be disturbed absent clear abuse of discretion. *Lukanen v. Lukanen*, 357 N.W.2d 380 (Minn.Ct.App.1984). Although it would have been preferable for the trial court to specifically set forth its reasoning for granting attorney's fees in the amended decree, the incomes of the parties are disparate. This disparity supports the trial court's decision to award attorney's fees. We cannot conclude that it abused its broad discretion.

## DECISION

Undocumented, unsecured intra-family money transactions were properly deemed gifts rather than loans.

A forecasted tax liability which was not based on speculation was properly figured into the marital debts.

The trial court did not err in valuing husband's interest in his company.

Both the spousal maintenance and the child support awards were proper.

It was within the trial court's discretion to award wife attorney's fees.

Affirmed.