**In Re the Marriage of: Louise Ann REDDING, Petitioner, Respondent,**

v.

**James Alan REDDING, Appellant.**

**Nos. C3–85–125, C6–84–2098.**

Court of Appeals of Minnesota.

July 30, 1985.

Review Denied Oct. 18, 1985.

Jack S. Jaycox, Bloomington, for respondent.

Robert F. Henson, Lee F. Arnold, Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Following dissolution of their marriage, both parties challenge trial court decisions on appellant's shares of stock in family corporations. We affirm in part, modify in part, reverse in part and remand.

## FACTS

A September 1984 judgment of the trial court dissolves the fifteen year marriage of the parties.

At the time of trial, appellant James Redding owned stock in two family corporations, Windom State Investment Company (Investment) and Windom State Bank (Bank). He held 4,465 shares, 13.78 percent of Investment stock, and he owned 100 shares, 1.25 percent of Bank stock. He was an officer and director of both corporations and employed as a Bank cashier.

The trial court valued appellant's Investment shares at $1,013,555, $227 per share. The court found that appellant's Bank shares were worth $50,000, $500 per share. The court found that 2,635 of James Redding's Investment shares were his non-marital property, leaving total marital stock worth $465,410.

Bank shares are owned by appellant, his sister (1.25 percent), others, including his father (5.6 percent), and Investment (91.9 percent).

Investment shares are owned by appellant, his sister (13.78 percent), his parents (53.32 percent), and others (19.2 percent).

Stock of a third family corporation, Windom State Credit Company, is owned by Investment (68.45 percent), and Bank (31.55 percent).

James Redding acquired his Investment shares in an exchange for 917 Bank shares he had acquired at various times since 1970. His Bank shares were obtained from his father, some by gift and some by purchase, and some were purchased by James Redding and respondent Louise Redding.

At trial, respondent contended that all of her husband's stock was marital property. The trial court agreed with appellant that 59 percent of his Investment stock traced to earlier non-marital acquisitions.

James Redding testified at trial that a minority interest in the family corporations had a limited market value. He estimated that the Investment stock was "literally valueless" and that the Bank stock could be sold for between $1 and $200 per share.

Respondent's valuation expert, Daniel Cartier, is a certified public accountant with extensive experience in determining the fair market value of banks. His appraisal figures for the Bank and Investment stock were based on public documents filed by the corporations with the Federal Reserve Banking System, and a review of Bank tax returns.

Utilizing an equity method and an earnings method, Cartier valued the Bank stock at $755.57 per share as of December 31, 1983.

In appraising Investment assets, Cartier added the corporation's cash to the value of its wholly-owned subsidiaries. He then deducted corporate liabilities. The figures were calculated for 1983 and the first quarter of 1984. Cartier valued Investment stock at $204 per share as of December 31, 1983, and $227 as of June 30, 1984. These figures were computed on the judgment that the stock would be afforded the benefits enjoyed by a majority interest in subsequent transactions.

In the judgment and decree of dissolution entered September 4, 1984, the trial court awarded Louise Redding 915 Investment shares and 50 Bank shares, half of the marital stock. The court required that Louise Redding be afforded the same future opportunities as James Redding for sale, exchange, or acquisition of stock in either corporation, and that appellant "provide the necessary documentation" to implement these conditions. The court added:

> In the event the Respondent fails to provide the necessary documentation to insure the above condition by endorsement on the stock certificates and filing of the same with all necessary parties and places, or, in the event he is unable to do so, then, in fact, he is awarded all 100 shares of the bank stock and required to pay the Petitioner the sum of $50,000 for the same, and he is awarded all the holding company stock, he is ordered to pay the Petitioner the sum of $207,805 for the same. Respondent shall have 90 days to make election and reach

agreeable terms or return to Court for further direction.

Both parties brought motions for an amended judgment. Appellant argued that ownership of the stock be divided as ordered by the court, but that the provision on conditions of ownership be omitted; instead, he proposed that all the stock be subject to a trust agreement, with terms acceptable to both parties or imposed by the court. An amended judgment was entered on November 15, 1984. The court made no substantive modifications regarding the award of stock and the alternative award of cash. However, the trial court made minor changes to clarify the conditions of stock ownership. The court stated that it did not intend to restrict appellant's right to gain additional shares of stock by inheritance, but that any other future advantage he secured should be shared proportionately with respondent, so as to avoid diluting the value of her stock.

On December 3, 1984, James Redding initiated his appeal of the September judgment and the November amended judgment. On its own motion, and without contacting the parties, the trial court ordered a second amended judgment on December 3, 1984. In this judgment, entered on December 5, 1984, the court omitted the award of stock to Louise Redding, awarded all the stock to appellant, and ordered that he meet the alternative obligation stated in the September judgment, payment of $207,-705 to Louise Redding. The judgment required that the payment be made within six months, or upon terms which were mutually agreeable to the parties. This amended judgment was appealed by James Redding in January 1985.

Louise Redding filed timely notices of review in both appeals.

## ISSUES

1. Has this appeal been taken from a final judgment?

2. Does the evidence sustain the court's valuation of appellant's stock, including a finding that appellant enjoys the continued value afforded to a majority stock interest?

3. Did the trial court abuse its discretion in awarding cash to respondent in lieu of shares of stock?

4. Does evidence sustain a finding tracing stock of appellant to non-marital acquisitions? Did the trial court err in finding that appreciation of non-marital stock was not proven?

5. Did the trial court err in requiring a payment of cash by appellant within a six month period of time?

## ANALYSIS

### I.

■ In a motion on appeal, respondent points out that appellant's property division dispute was presented in an appeal perfected before the final action of the trial court on that issue. We agree with respondent that the trial court effectively retained jurisdiction during a period when appellant could elect between alternative forms of division. *In re Welfare of C. Children,* 348 N.W.2d 94, 99 (Minn.Ct.App.1984). However, retention of power to address whether an election occurred did not make the judgments less appropriate objects for appeal under Minn.R.Civ.App.P. 103.03. Both judgments determined alternative forms of division, and appellant contends neither alternative was within the limits of the trial court's discretion.

### II.

Appellant contends that the trial court's ·valuation of Investment and Bank stock is excessive.

■ We will not overturn the trial court's valuation of assets unless they are clearly erroneous. *Pekarek v. Pekarek,* 362 N.W.2d 394, 396 (Minn.Ct.App.1985). Furthermore,

> [e]xactitude is not required of the trial court in the valuation of assets in a dissolution proceeding; it is only necessary that the value arrived at lies within a reasonable range of figures.

*Johnson v. Johnson,* 277 N.W.2d 208, 211 (Minn.1979).

■ The determination that Bank shares were worth $500 is supported by competent evidence. However, the trial court apparently made a clerical mistake in awarding $50,000 rather than $25,000 to substitute for delivery of 50 Bank shares. Respondent does not challenge correction of this error.

■ As to his shares of Investment stock, James Redding disputes the trial court's determination that his interest would receive the same benefits as his parents' majority interests in subsequent transactions. He asserts this finding is unduly speculative and arbitrary. *See Balogh v. Balogh,* 356 N.W.2d 307, 312 (Minn. Ct.App.1984). He argues that the court had to take account of the alternative contingency, that his interest would not be afforded the benefits of piggybacking with his parents' majority interest. *See Rogers v. Rogers,* 296 N.W.2d 849, 853 (Minn.1980).

If appellant's stock was liquidated at current market value for a minority interest in a closely-held corporation, the value of the stock could be considerably diminished. However, appellant cites no case and we find none which requires that current liquidation value alone is the dispositive determinant of the value of stock in circumstances such as these.

There is adequate evidence in the record to show that the Investment stock has significant value if it enjoys the benefits attributed to a controlling interest in subsequent transactions. James Redding's acquisitions and exchanges of corporate stock were directly or indirectly arranged or facilitated by his father over the course of a decade. We conclude it was not arbitrary nor clearly erroneous for the trial court to value the Investment stock on the premise that the parent will continue to facilitate or extend to James Redding the benefits concurrent with a majority interest in the closely-held corporation in subsequent transactions.

*Balogh,* one of the cases cited by appellant in support of his argument, is distinguishable. The trial court in *Balogh* arbi-

trarily premised its valuation of the husband's interest in a law partnership on one of three possible alternative methods of computation provided in the partnership's buy-sell agreement. *Balogh*, 356 N.W.2d at 311–12. This premise was without an acceptable factual basis. *Id.* Here, because of the lengthy history of a father facilitating his son's stock ownership, the trial court had an acceptable factual basis to determine that the son's interest would be afforded the benefits of a majority interest in subsequent corporation transactions.

Similarly, the rationale of *Rogers* does not contradict valuation founded on an assessment of the future security of a family arrangement. The supreme court observed in *Rogers* that valuation of a spouse's stock should not be founded on the assumption he will continue to work as a "key man" in the corporation. That assumption, the court observed, would serve to compel his future work, "perhaps against his wishes." *Rogers*, 296 N.W.2d at 853. The underlying conclusion here is one of a much different kind. It relates to the security of family relationships, not future service. It regards a business with market value independent of the role of any individuals. The court has not made an assumption, but an assessment backed by undisputed evidence of a business pattern which unfolded for many years.

### III.

Appellant's challenge of the trial court's valuation of stock includes another argument. He contends that it is impossible to determine a fair value for the Investment stock, a valuation that reflects all contingencies, and that an in-kind distribution of both Bank and Investment shares is the only just approach. He renews on appeal his suggestion for a voting trust. He argues that the law prefers a division that delays valuation, in cases where present value determinations are unacceptably speculative. *Taylor v. Taylor*, 329 N.W.2d 795, 799 (Minn.1983).

As noted already, we do not agree that a present valuation is unduly speculative.

Moreover, an in-kind distribution of family corporation stock may not be a feasible alternative. It is an investment very different than the vested pension benefits considered in *Taylor*.

As the trial court found, any in-kind distribution depended on a workable plan to avoid family transactions which would dilute the value of respondent's shares. The plan suggested by the trial court was found infeasible, and it was within the court's discretion to reject an alternative notion of some form of voting trust.

We conclude that the court acted within the limits of its broad discretion in reaching the ultimate conclusion to award respondent cash in lieu of stock.

### IV.

Louise Redding contends that the trial court erred in its determination that 2,635 shares of Investment stock were non-marital. She asserts that appellant commingled non-marital and marital Bank stock in the exchange for 4,465 shares of Investment stock, effecting a transmutation of appellant's non-marital stock into marital assets. Alternatively, respondent argues that the trial court should have determined that 500 shares of the Bank stock exchanged in 1980 for Investment stock were marital, so that Louise Redding's marital interest in the Investment stock constitutes 55 percent rather than 41 percent.

It must be presumed that property of each spouse acquired during the marriage is marital property for purposes of division in a dissolution case. *Kottke v. Kottke*, 353 N.W.2d 633, 635 (Minn.Ct.App. 1984), *pet. for rev. denied*, (Minn. Dec. 20, 1984); Minn.Stat. § 518.54, subd. 5 (1984). However, non-marital property includes an asset acquired as a gift, Minn.Stat. § 518.-54, subd. 5(a), and assets acquired during a marriage in exchange for non-marital assets constitute non-marital property. Minn.Stat. § 518.54, subd. 5(c). One who claims such an exchange must trace the exchange of the non-marital asset by a

preponderance of the evidence. *Kottke,* 353 N.W.2d at 636.

■ Extensive testimony dealt with appellant's acquisition of eight blocks of Bank shares subsequently exchanged for Investment stock. Each acquisition of Bank stock resulted in the issuance of an individual stock certificate. When the 917 shares of Bank stock were exchanged, each Bank share was converted at a set rate into Investment shares. We conclude the evidence is sufficient to support the trial court's determination that James Redding acquired 59 percent of the Bank stock as gifts constituting non-marital property. Moreover, the weight of the evidence also supports a determination that the non-marital stock was readily traceable.

### V.

Louise Redding also contends that she is entitled to receive a sum for the appreciation in value of James Redding's non-marital stock. This issue has not been previously addressed in Minnesota. *See, however, Schmitz v. Schmitz,* 309 N.W.2d 748 (Minn.1981).

■ The trial court determined there was no proof as to any appreciation in value of the non-marital stock. Consequently, the court granted no award for appreciation of the stock. This determination is supported by our review of the record. Thus, the legal issue addressed by respondent is not before us.

### VI

■ James Redding contends that it is unreasonable and arbitrary for the court to require that his cash payment to respondent be made within six months. He argues that his wealth is concentrated in family corporation stock, and that he cannot quickly raise money on the basis of these investments. He asserts that any cash payment obligation should be due in a reasonable pattern of installments.

It is not evident that the trial court gave deliberate attention to this issue. The Minnesota Supreme Court has recognized the need for a careful decision in issues of this kind after other issues have been settled on appeal. *Bollenbach v. Bollenbach,* 285 Minn. 418, 442–43, 175 N.W.2d 148, 163 (1970). Using that approach, we remand the case for a determination of a reasonable demand for payment, after considering current proposals of the parties.

### DECISION

The trial court did not err in its findings of fact on the value of marital stock and the identification of appellant's non-marital stock. The evidence does not contradict a finding that appreciation of non-marital stock was not proven.

The trial court did not abuse its discretion in awarding cash to respondent in lieu of shares of stock.

To correct an inadvertent error, the amended judgment is modified to provide a $25,000 award to respondent in lieu of 50 shares of Bank stock.

The judgment is reversed on a requirement that appellant's cash distribution be made within six months, and that question is remanded for further consideration by the trial court.

Affirmed in part, modified in part, reversed in part and remanded.