**In re the Marriage of Margaret A. NEMITZ, Petitioner, Respondent.**

**v.**

**Robert W. NEMITZ, Appellant.**

**No. C6–85–359.**

Court of Appeals of Minnesota.

Oct. 29, 1985.
Review Denied Dec. 30, 1985.

Stephen C. Davis, Brian L. Sobol, Minneapolis, for respondent.

Jack S. Jaycox, Robert W. Due, Bloomington, for appellant.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Robert W. Nemitz appeals from the amended judgment in this dissolution proceeding arguing that the trial court overvalued his business interests, erred in dividing the marital assets by failing to consider a $10,000 inheritance as nonmarital property, erred by requiring him to pay $60,000 of his former wife's attorneys fees and expenses, and erred by not considering the tax consequences of the property division. Respondent did not file a notice of review. We affirm.

## FACTS

The parties were married on June 18, 1954. At the time of trial appellant was 51 years old and respondent was 50 years old. Three children were born to the parties. All of them are emancipated.

The parties accumulated substantial property during the course of their marriage including real estate, personal property and business holdings. The parties stipulated as to the value of many of their assets. Expert witnesses were called to testify as to the value of the major asset of the parties—appellant's 50% share of the Rasmussen College System. This system consists of Rasmussen Business College, Inc., Northern Technical School of Busi-

ness, Inc., and St. Cloud Business College, Inc., all Minnesota corporations.

The Rasmussen Business College was begun by appellant's father and was purchased by appellant and his brother in 1961. Prior to that time, appellant taught in the business college. In 1973 appellant and his brother purchased St. Cloud Business College for $15,360, later purchasing a building to house the school. In December 1978, Northern Technical School of Business, which operates on leased property, was purchased by the brothers for $225,000. Appellant is also a 50% partner with his brother in Nemitz and Nemitz Management Company, a Minnesota general partnership. This company provides management services to the Rasmussen College System in return for 15.2% of the schools' revenue and pays the salaries of appellant and his brother.

The petition for dissolution was served in September 1982. Before trial in January 1984, the parties were encouraged to and did enter into a stipulation dividing their assets. The judgment entered pursuant to this stipulation was set aside by appellant's collateral attack and this matter was subsequently tried.

A four-day trial was held in September and October 1984, at which evidence was presented on the valuation of the parties' assets including appellant's business interests. Three expert witnesses testified as to the value of the Rasmussen College System.

Appellant had two experts testify as to the value of his 50% interest in the college system. Mr. Rhude, an owner and operator of a business college, testified that appellant's interest was worth about $300,000 with existing management and about $200,000 without. He capitalized average before-tax earnings of the schools over the previous six years to arrive at his valuation.

Mr. Weinberg, a certified public accountant, also testified for appellant. His method involved capitalizing a projected income stream, assuming declining enrollments and increasing costs. He used a 25.7%

discount rate due to the "risks of the business school industry." This produced a value of $700,000 for appellant's share. An additional 25% discount was applied to this figure to calculate the value of the business presuming a sale. This discount reflected appellant's "key man" status and limited marketability of appellant's 50% share. Mr. Weinberg's final valuation of appellant's interest in the school system was $525,000, exclusive of real estate.

Appellant testified his share of the real estate owned by the businesses was valued at about $320,000. This appraisal was based on an independent appraisal and appellant's own knowledge. The experts agreed that Nemitz and Nemitz Management Company had no value apart from its assets. Appellant testified his after-tax share of those assets, assuming sale, was $31,800. Respondent's expert, Mr. Bremer, valued appellant's one-half interest in the assets at $77,500.

Respondent's expert, Mr. Bremer, a certified public accountant, also testified as to the value of appellant's interest in the Rasmussen College System. Bremer capitalized the projected income stream of the college system assuming a 10% average annual increase in earnings. He applied a 15% discount factor and did not apply a "key man" status discount or a discount for limited marketability of the stock. Bremer valued appellant's interest in the college system and in the management company at $1,065,000. He relied on an independent real estate appraisal in valuing appellant's share of the college system's real estate at $405,000. Bremer valued appellant's total business interests and assets at $1,470,000.

The trial court valued appellant's business interests and assets at $1,400,000 in its amended judgment. In its amended judgment the trial court awarded respondent $500,000 as her proportionate share of the business assets in addition to personal property in her possession and other assets valued at $709,000. Appellant was awarded the stock and real property of the businesses in addition to other assets valued at

$997,000. Appellant was ordered to pay respondent $500,000 for her share of the business interests by making a $60,000 cash payment within 30 days and $440,000 in monthly installments at 9% interest, payable over 11 years (about $5,260 monthly). Appellant was also required to pay $60,000 of respondent's attorneys fees and expenses, with $25,000 due by February 1, 1985 and the balance payable within 90 days of the court order.

Appellant moved for an order amending the findings of fact or, in the alternative, for a new trial. Following a hearing, the trial court amended the findings and entered judgment. Appellant appeals from the amended judgment and the order denying a new trial.

### ISSUES

1. Did the trial court assign a proper value to the appellant's business interests?

2. Did the trial court err in calling the Balsam Lake property a marital asset?

3. Did the trial court err in failing to consider the tax consequences of the property settlement?

4. Did the trial court abuse its discretion in requiring appellant to pay a portion of respondent's attorneys fees?

### ANALYSIS

1. *Valuation of business interests*

The Minnesota Supreme Court has held that a trial court's determination as to the value of a business in a dissolution action is a finding of fact which should not be set aside on appeal unless clearly erroneous:

> Assigning a specific value to an asset is a finding of fact; disputes as to asset valuation are to be addressed to the trier of fact, and conflicts are to be resolved in that court. Such findings of fact, when made without a jury, shall not be set aside unless clearly erroneous on the record as a whole.

*Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975) (citations omitted).

Appellant argues the court attached the wrong valuation to his interest in the Rasmussen School System. He also argues that the court erred by not providing detailed findings explaining how it arrived at its valuation. Therefore, appellant does not know whether the court discounted for appellant's "key man" status, the limited marketability of his interest, and other factors.

We do not believe the trial court must prepare its own detailed analysis of its valuation of a business so long as the record reasonably supports the court's finding and the finding is not clearly erroneous or based on an error of law. Some explanation does help this court determine whether the record reasonably supports the court's finding and whether the finding is based on an error of law.

The trial court concluded, in its memorandum supporting the amended findings, that appellant's total share in corporate and partnership assets was worth $1,400,-000. (In its initial findings the court found that the reasonable value of the appellant's business interests *exceeded* $1,000,000.) The court's finding of value is supported by the testimony and exhibit of respondent's expert, Mr. Bremer, who valued appellant's business interests and assets at $1,470,000.

When appellant decided to appeal this finding, the trial court explained its reasoning in valuing the business interests and assets of appellant:

> The Court heard testimony from three expert witnesses, in addition to Mr. Platz [the business accountant], relative to the value of Respondent's interest. * * *
> The various appraisal figures include a number of different methods, and all of the experts discounted actual assets to their present cash value.
> One of the great variations in the final evaluation depended on the amount of discount applied by the experts. As an illustration, Mr. Weinberg testified that the Respondent's interest in the Rasmussen schools only was $525,000, and if we add the value of the real estate, and Respondent's interest in Nemitz & Nem-

itz, the total is $1,070,000. Mr. Weinberg used a discounted cash flow basis and a discount rate of 25% to produce that figure. Were a figure of 15% discount used, however, Respondent's actual interest in the corporations would be increased by some $400,000.

In summary, Jerry Bremer appraised the Respondent's interests in the Rasmussen Corporation, including real estate at $1,470,000; Mr. Weinberg appraised the interest at $1,070,000 (real estate value added), and Lauren Rhude appraised Respondent's interests at $830,000 (real estate and Nemitz & Nemitz share added.) Considering all of the evidence presented to the Court, only one conclusion can be reached. The amounts awarded to the Petitioner herein are fully justified by the evidence, and are perhaps on the conservative side. Respondent has enjoyed an income in excess of $225,000 for the years 1983 and 1984, * * *.

Memorandum accompanying order setting terms of the supersedeas bond.

Appellant argues the court should have appointed an independent appraiser because of the disparate appraisals. This case is not like *Balogh v. Balogh*, 356 N.W.2d 307 (Minn.App.1984), where the disparity between two appraisals (of $1,640 and $90,000) was substantial and there was nothing in the court record to explain the court's selection of a halfway figure ($45,000). *Id.* at 313.

■ The trial court findings relative to business value are not clearly erroneous. The trial court considered all appraisers' testimony, noting their differences and drawing its own conclusions from the evidence. We must sustain its determination of market valuation since "it falls within the limits of credible estimates made by competent witnesses even if it does not coincide exactly with the estimate of any one of them." *Hertz*, 304 Minn. at 145, 229 N.W.2d at 44.

Appellant also argues that the court erred in relying on respondent's appraiser who failed to discount the value of the school system for appellant's "key man" status and the limited marketability of appellant's 50% interest. The record supports the trial court's valuation.

■ Appellant's services can be distinguished from those performed by a "key man." Typically, a "key man" performs highly personal or unique services from which the entire business income is derived. For example, in *Rogers v. Rogers*, 296 N.W.2d 849 (Minn.1980), the "key man" owned an engineering services company, a service business largely dependent upon a few key people. *Id.* at 853. The entire business income is derived from the performance of their personal services. In *Lowe v. Lowe*, 372 N.W.2d 65 (Minn.Ct. App.1985), the entire business income is derived from respondent's rehabilitation counseling services. This business is so highly personal and unique that the appraiser presumed any sale of the business would require inclusion of a non-compete agreement. *Id.* at 66.

Appellant's college system earns its income from instructing students. Appellant markets the college system and manages its finances. The college system would be saleable as a business even without appellant in his role, according to his own experts. The business could be sold and appellant could remain an active employee or consultant or he could change careers. This would not substantially deprive appellant of his livelihood, *see Lowe* at 67, or would not subject him to "a lien on himself," see *Rogers* at 853.[1]

---

1. We note the trial court only awarded respondent $500,000 of a business the court found worth $1.4 million. As the court notes in its findings, simply adding the value of the real estate and the value of appellant's interest in Nemitz and Nemitz Management Company to the appraisal of Mr. Weinberg, appellant's appraiser, produces a valuation of $1,070,000.

Mr. Weinberg discounted his valuation for appellant's "key man" status and the limited marketability of the business, presuming a sale. Therefore, even if appellant sells his share for the very value his appraiser attached to his business share, appellant would clearly not be subject to a harsh judgment constituting "a lien

## 2. *Division of marital assets*

In dissolution cases the trial court is accorded broad discretion with respect to the division of property. The trial court must reach a clearly erroneous conclusion that is against logic and the facts on record before this court will find an abuse of discretion.

*Burton v. Burton,* 365 N.W.2d 310, 312 (Minn.App.1985), *pet. for rev. denied,* (Min. May 13, 1985).

■ The trial court valued all marital assets at $1,714,000. It awarded respondent approximately $709,000 in assets, and appellant was awarded approximately $997,000 in assets. The trial court did not abuse its discretion in awarding appellant approximately 58% of the parties' assets.

Appellant also complains that the trial court failed to award him the "Balsalm Lake Property" or a designated amount for his contribution of a nonmarital asset invested in this property. The trial court included the lake property in the marital assets and awarded it to respondent. Appellant was given a right of first refusal should respondent sell it within five years.

Appellant argues the Balsalm Lake Property constitutes nonmarital property under Minn.Stat. § 518.54, subd. 5 (1984) because it was purchased with a $10,000 inheritance. The record clearly shows the money was not *appellant's* inheritance. Appellant testified that his mother *gave* him $10,000 out of money *she received as an inheritance.* Respondent testified "May Nemitz was the inheritor of Walter's money, and *she gave each of the children's families* $10,000."

■ Under section 518.54, subd. 5(a), a gift acquired by either spouse during the marriage constitutes nonmarital property. Appellant testified his mother gave him $10,000. Respondent testified her mother-in-law gave each couple $10,000: "Nancy and her husband got $10,000 * * * [and] Bob and I got the $10,000 which we put into the lake." Although the testimony was contradictory, appellant had the bur-

den of proof. Minn.Stat. § 518.54, subd. 5 (1984) states: "All property acquired by either spouse subsequent to the marriage and before a decree of legal separation is presumed to be marital property * * *." The trial court finding that the lake property was a marital asset, is not clearly erroneous.

## 3. *Tax consequences*

■ Appellant claims that the trial court should have considered potential tax consequences of the property division. The record shows only general evidence on this point. "[T]he law preludes any consideration [of tax consequences] where the court must speculate because the evidence is lacking or nonspecific." *O'Brien v. O'Brien,* 343 N.W.2d 850, 854 (Minn.1984). "[I]t is within the discretion of the trial court to consider the tax consequences of its property division * * *." *Miller v. Miller,* 352 N.W.2d 738, 744 (Minn.1984).

Appellant did not advise the court which property, if any, he must sell to satisfy the monetary award to respondent, nor to what extent, if any, he could shelter any gain realized from such a sale. *See Miller* at 744. "The court must have sufficient information that the actual tax liability resulting from the property division can be calculated with a reasonable degree of certainty." *Id.* This information was lacking here.

Appellant apparently was dissatisfied that the trial court failed to structure the property settlement to take advantage of a recently enacted federal tax law. Respondent notes that appellant need not suffer any adverse tax consequences if he pays her award out of his net income. She further notes he may realize a tax savings if he borrows the funds from a bank or the schools.

The trial court did not abuse its discretion by failing to consider potential tax consequences of the division ordered here.

on himself." *See Rogers v. Rogers,* 296 N.W.2d 849, 853 (Minn.1980).

#### 4. *Attorneys fees*

"[A]llowance of attorney's fees in dissolution cases rests almost entirely in the discretion of the trial court. An award should not be disturbed absent clear abuse of discretion." *Novick v. Novick*, 366 N.W.2d 330, 334 (Minn.App.1985).

Respondent's total legal fees exceeded $73,000 ($52,500 fees and $21,360 expenses, including appraisal fees). The trial court awarded her $60,000 in fees and expenses. According to the affidavit of respondent's attorney, filed with the district court on October 2, 1984, about $37,000 was earned as the parties prepared for and entered into a stipulation, about $13,000 was earned during appellant's proceedings to collaterally attack the entered stipulation, and about $24,000 was earned during trial.

The reasonableness of the fees awarded was not challenged before this appeal. Appellant's motion for amended findings and a new trial only requested that each party pay his or her own fees and expenses. The trial court was in the best position to determine the reasonableness of fees and expenses claimed. Absent a challenge to their reasonableness at the trial court level, we are only in a position to determine if the court's award was clearly erroneous or if the court abused its discretion in awarding fees.

Minn.Stat. § 518.14 (1984) requires the trial court to consider the financial resources of both parties in deciding whether to award fees. In awarding respondent a portion of her fees, the trial court noted that during the period this matter has been in litigation, respondent has had no income. Appellant continued to earn a sizeable income from the operation of his businesses.

The trial court award is not clearly erroneous since it is supported by the affidavit of respondent's attorney and by the prolonged and contested litigation here. Further, the trial court did not abuse its discretion in ordering appellant to pay a portion of respondent's fees. Although respondent was awarded significant assets in this action, she does not have appellant's years of experience and training because she spent a good portion of her life working as a homemaker and raising children. Appellant has the continuing ability to prosper and acquire assets as the owner of a successful and growing business. Respondent has no such prospects at this time and will likely have to deplete some of her assets to maintain her lifestyle. As held in *Miller* and in *Burton v. Burton*, 365 N.W.2d 310 (Minn.Ct.App.1985), . *pet. for rev. denied*, (Minn. May 31, 1985), a sizeable award of assets does not preclude an award of fees in a dissolution proceeding. Thus, the trial court did not abuse its discretion here.

*Fees on this appeal:*

Respondent seeks an award by this court of substantial attorneys fees and expenses on appeal. We deny respondent's request and direct each party to pay his or her own attorneys fees and expenses on appeal.

#### DECISION

The trial court did not err in valuing appellant's business interests and assets, or in finding that the gift from appellant's mother was a marital asset. The trial court did not abuse its discretion in dividing the assets, in failing to consider the tax consequences of the division, and in awarding respondent a portion of her attorneys fees. We deny respondent's request for fees related to this appeal.

Affirmed.