Marilyn Annette THEDENS,
Petitioner, Appellant,

v.

Gerald Dennis THEDENS, Respondent.

No. C7–86–1014.

Court of Appeals of Minnesota.

Feb. 17, 1987.

Philip K. Arzt, Minneapolis, for appellant.

Richard A. Zimmerman, Aitkin, for respondent.

Considered and decided by WOZNIAK, P.J., and LESLIE and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

The marriage of appellant Marilyn Thedens and respondent Gerald Thedens was dissolved pursuant to a judgment and decree entered March 18, 1986, amended May 1, 1986. The trial court awarded no spousal maintenance, divided the parties' property, and awarded appellant $2452 in attorney fees. Marilyn Thedens appeals the property division, the denial of maintenance, and the inadequate award of attorney fees. We affirm the property settlement and the maintenance issue, but reverse on the attorney fees.

## FACTS

Marilyn and Gerald Thedens were married on June 3, 1974. When the parties married, respondent owned 137 acres of farm land and a three-acre tract of land with a home and farm buildings. The trial court found that at the time of the marriage, respondent's total equity in the property, equipment, and animals was approximately $147,400.

During 1975, appellant and respondent operated the farm, each of them assuming some of the farm duties and appellant assuming household duties. Respondent sold seed and appellant took a full-time job at a local nursing home. In November 1976, respondent sold the farm homesite and ten acres on a contract for deed for $90,000, a portion of which paid off an encumbrance on the property. The parties moved to California. They traded respondent's remaining Minnesota farm land for an apartment building in San Diego, California.

While they were in California, both appellant and respondent obtained real estate licenses. Appellant worked as a nurse, and respondent went to law school. While attending law school, respondent was not actively employed. In September 1984, he was admitted to the Minnesota bar.

While living in California, the parties acquired title to a homestead in Oceanside, California, which they obtained in lieu of real estate commission due respondent. The property was subject to a prior indebtedness.

The trial court found that respondent established a nonmarital interest in: a Mille Lacs Lake home; a deed of trust for a home the parties sold in Encinitas, California; a Mercedes automobile; a deed of trust for an apartment building (apartment II) the parties sold in California; three vacant lots in Isle, Minnesota; a house in Isle; business property in Isle; and a diamond ring.

The trial court found respondent's net nonmarital interest was $169,736. This was subtracted from the total value of the parties' property, $353,573, leaving a marital estate of approximately $184,000. From that figure, appellant was awarded $92,009, consisting of $44,461 in tangible property and a cash settlement of $47,548, to be paid by respondent. The court awarded no maintenance to either party. In addition to the cash settlement, the court ordered respondent to pay appellant $2452 toward her total attorney fees and costs of $9718.

Marilyn Thedens appeals from the judgment and decree and amended judgment.

## ISSUES

1. Did the trial court err in valuing the parties' property?

2. Did the evidence support the trial court's award of nonmarital property to respondent?

3. Did the trial court err by failing to award maintenance to appellant?

4. Was the trial court's award of $2452 attorney fees to appellant so inadequate, on these facts, as to constitute error?

## ANALYSIS

### I

*Property Valuation*

A trial court is not required to be mathematically exact in its valuation of assets so long as the value at which it arrives lies within a reasonable range of figures. *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn.1979). Unless clearly erroneous, a trial court's finding on the value of assets will not be disturbed. Minn. R. Civ. P. 52.01; *Olness v. Olness*, 364 N.W.2d 912, 915 (Minn.Ct.App.1985).

Appellant claims the trial court erred in its evaluation of the property because it consistently accepted the lowest values offered. We cannot find error when each valuation, although the more conservative offered, had an acceptable factual basis in the record and was within a reasonable range of values.

Appellant challenges the trial court's valuation of respondent's law practice and a Pizza Den restaurant. Both parties presented documentary evidence and testimony to establish values of these businesses.

■ Respondent testified that the Pizza Den equipment cost about $26,980 when purchased in March and June of 1984, but has a present fair market value of about $6000. A certified public accountant testified that the resale value of used equip-

ment is substantially lower than its purchase price. Appellant's Exhibit 8 indicated a $26,900 value for the Pizza Den equipment, and a value of $33,990 for the restaurant as a going business. Taking into account the deference accorded trial courts presented with conflicting oral testimony, the trial court's finding that the present fair market value of the equipment was $15,000 is within an acceptable range.

■ Appellant also contends the court undervalued respondent's law practice. She introduced an exhibit which valued respondent's law office furniture at $2652, accounts receivable at $3500, and work in progress at $7000. The expert who prepared appellant's exhibit admitted that the amounts for accounts receivable and work in progress should be discounted 20% for collectability.

The trial court valued the office furnishings at $2620, the accounts receivable at $2800, and the work in progress at $5600. The court found no good will value in the business. Taking into account the speculative nature of the value of a small law practice, used furniture, and law books, the trial court's findings here are within an acceptable range and will not be disturbed on appeal.

■ The trial court assigned a value of $120,000 to the homestead. Appellant's expert valued the homestead at $125,000 and respondent's expert valued it between $120,000 and $125,000. That valuation will not be disturbed on appeal.

■ The court valued other real estate at $24,000, appellant's expert having valued it at $25,500, and respondent's expert between $20,000 and $24,000. Neither that finding nor the trial court's value of $18,000 on some vacant properties, where appellant offered testimony of $22,500 and respondent's was $18,000–$20,000, is subject to reversal under our scope of appellate review.

■ Although the trial court did generally accept respondent's and respondent's expert's opinion of proposed value, as appellant claims, the disputed dollar amounts

were within an extremely narrow range. We take judicial notice of the fact that qualified expert appraisers acknowledge their opinions on value cannot be taken literally to the penny, but must, because of market intangibles, be given at least nominal leeway on either side of a given figure. Taken overall, the trial court's valuation of the parties' personal and real property was within permissible limits and will not be disturbed on appeal.

## II

### Award of nonmarital property

The trial court concluded that respondent had a total nonmarital interest of $169,736 consisting of:

a) Mille Lacs Lake home

b) Encinitas deed of trust

c) a Mercedes,

d) a deed of trust from the sale of an apartment building,

e) other real estate (the Kvasnicka house)

f) vacant land

g) business property

h) diamond ring he gave appellant.

While we conclusively presume that each spouse made a substantial contribution to the acquisition of income and property acquired while they were living together as husband and wife,[1] property is nonmarital if acquired in exchange for or is the increase in value of property otherwise described as nonmarital. Minn. Stat. § 518.54, subd. 5(c) (1984).

Appellant contends that the trial court erred by not applying the *Schmitz* formula to determine the proportion of property attributable to respondent's nonmarital investment. *See Schmitz v. Schmitz,* 309 N.W.2d 748 (Minn.1981). According to *Schmitz,* nonmarital interest grows in proportion to the appreciation of the property. *Schmitz* also takes into account the fact that mortgage payments may have been made with marital property, either from the earnings of the parties or from income generated by a nonmarital asset. *Cf. Campion v. Campion,* 385 N.W.2d 1 (Minn.Ct.App.1986). The trial court made specific findings delineating transactions that took place after the sale of respondent's farm. These findings contain the information necessary to apply the *Schmitz* formula.

The trial court found respondent invested $30,900 from the farm proceeds in the Encinitas house. The purchase price of the Eincinitas house was $68,500, and the price at the time of sale was $130,000. Applying the *Schmitz* formula, respondent's nonmarital share was $58,642.32. Based on a first mortgage, on which $33,761.50 was still due at the time the house was sold, respondent's share was $58,000 out of the parties' net equity of $96,238.50, giving respondent 60.9% of the net equity. If this figure is translated to the purchases made with the proceeds from twice refinancing the home, respondent's nonmarital investment in the subsequent purchases equals 60.9% of the parties' investment.

Respondent's nonmarital interest in the Mercedes, purchased with $9925 of the $15,000 received from the parties' first refinancing of the Encinitas home, is $6,044.33. His nonmarital interest in the $7419 deed of trust, received from the sale of the Encinitas house, is $4,518.17. His initial nonmarital investment in the Mille Lacs home, on which the parties made a $46,000 downpayment, was $28,014.

Respondent traded his farm, with an equity of $145,000, for an apartment building (apartment I) worth $550,000 at time of purchase. At the time it was traded for apartment II and a deed of trust, apartment I was worth $670,000, and respondent's nonmarital interest was $176,636. The apartment II was worth $625,000 at the time of the trade. The parties' net equity in apartment II was $185,000, and the deed of trust was worth $45,000. Respondent's nonmarital interest was therefore about 76.8% of the total $230,000 equity the parties had in the property.

---

1. Minn.Stat. § 518.58 (1984).

Respondent's nonmarital interest in apartment II, at the time of purchase, was $142,077. His nonmarital interest had increased to $210,728 when the building was sold for $927,000. A $23,976 loan secured by the deed of trust was consumed for living expenses, while $10,000 was invested in a $20,000 lake lot, which was later used as down payment on business property in Isle, Minnesota, giving respondent a $7680 nonmarital investment in the business property.

The parties refinanced apartment II and received a check for $98,042. That, plus a promissory note, secured by deed of trust, in the amount of $270,269.34 and a check for $60,620, gave the parties total equity of $428,931.34. Respondent's nonmarital interest, $210,728, constituted 49.1% of the total equity. Of the refinancing amount, the parties invested $70,000 in the Mille Lacs homestead and $8000 in the Kvansicka home in Isle. Respondent's nonmarital investment in the Mille Lacs home from this source was $34,370 and his nonmarital investment in the Kvansicka home was $3928. His interest in the deed of trust from apartment II was $113,062.24. Of the proceeds from the sale of apartment II, $6000 was invested to purchase vacant properties in Isle.

Respondent's nonmarital investment in the vacant properties was $2946. The parties used $20,000 from the sale of the apartment to pay off a loan, $4864 of which had been used to finance the business property in which respondent already had a $7680 investment, giving respondent a total nonmarital investment in the business property of $10,068.22.

Respondent's nonmarital share from the apartment II deed of trust is $113,310.03. Because the homestead did not appreciate, respondent's nonmarital interest in the Mille Lacs home is $62,384, $34,370 from the second apartment building and $28,014 from the Encinitas house. The Kvasnicka house also did not appreciate, and respondent's nonmarital interest remained $3928. The vacant properties purchased for $25,250 depreciated to $18,000, and respon-

dent's nonmarital interest proportionally decreased to $2,101.54. The business property in Isle appreciated from $47,500 to $50,000, giving respondent a nonmarital interest of $10,598.12. Respondent's nonmarital interest in the Mercedes is $6,044.33, and from the Encinitas deed of trust is $4,518.17. Finally, the court found that a $5000 ring respondent purchased from his mother for $300 was a partial gift; respondent's nonmarital interest was $4700.

Respondent's nonmarital interest was reduced by the parties' tax liabilities, which the court attributed primarily to the sale of the California apartment building. Respondent's share of the $71,982 federal tax liability was $35,343.16, and his share of the $1320 Minnesota tax liability was $648.12.

■ Although the court did not mention the *Schmitz* formula by name, its net nonmarital figure of $169,736 is strikingly close to the $171,592 that we find after tracing figures and literally applying the *Schmitz* formula.

Although we prefer that trial courts specify the method by which they determine whether property is marital or nonmarital, we find that here the trial court arrived at an acceptable result. The marital property was split equally between the parties; the nonmarital award to respondent, although generous, has support in the record.

### III.

*Maintenance*

■ A trial court has wide discretion in determining whether to award spousal maintenance. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). Minn. Stat. § 518.552 (1985) sets out the factors to be taken into consideration in determining the amount and duration of maintenance. Although the court must consider the factors outlined in the statute, *Leach v. Leach*, 356 N.W.2d 378 (Minn.Ct.App.1984), individual findings on each specific factor are not

required. *Justis v. Justis*, 384 N.W.2d 885 (Minn.Ct.App.1986).

Appellant worked as a registered nurse for fifteen years before the marriage and off and on during the marriage. She is presently employed part time as a nurse, making $9.49 per hour. The trial court found her present expenses are about $1000 per month, and noted that they will increase to $1500 to $2000 per month if she moves to California. The court then found that her income as a registered staff nurse in California, should she move, will rise to $14 per hour. The court further found that her varicose veins do not prevent her from working.

The trial court found that during the past year respondent's law firm generated an approximate net income of $3800, and he had received approximately $300 per month from the restaurant, and $345 per month from apartment rentals. The trial court found that appellant did not lack sufficient property to provide for her reasonable needs. It found that appellant would be able to support herself as a practical nurse. It appears from the record that, as much as possible, the trial court awarded appellant liquid assets.

The trial court specifically found that if appellant moved to California, her incurred increase in projected expenses to $1500–2000 per month would be offset by a projected income increase to approximately $1600–2240 per month.

The court stated that in making the decision to award no maintenance, it considered the length and circumstances of the marriage,[2] the property available to the parties, the employability of the parties, their respective expenses, and the standard of living established during marriage. We hold the trial court did not err by not granting maintenance to appellant.

## IV.

### Attorney Fees

A trial court has broad discretion in determining whether to award attorney fees,

and how much to award. *Novick v. Novick*, 366 N.W.2d 330, 334 (Minn.App.1985).

Here appellant submitted to the trial court a bill for attorney fees and costs totaling $9718. The trial court set out no explanation for its award of $2452 to appellant. Noting the $47,548 property settlement the court required respondent to pay appellant, it appears the trial court simply picked an attorney fee figure of $2452 to arrive at the round sum of $50,000 respondent has to pay appellant. That is not an acceptable basis on which to calculate fees in a dissolution.

In *Kohner v. Kohner*, 358 N.W.2d 721 (Minn.Ct.App.1984), this court held that where the wife did not have the ability to pay her attorney fees and costs, the trial court erred in awarding only half the requested attorney fees and costs. Here, appellant received a limited property settlement because of the large amount of nonmarital property awarded directly to respondent, and she received no maintenance. The trial court's factual findings on appellant's projected monthly expenses and projected monthly income, which we accept as being within the bounds of a trial court's discretion, do not leave excess income with which to pay her attorney fees of $9718. To pay these costs and fees, appellant would have to immediately spend a significant percentage of the cash portion of her property settlement. Here, based on *Kohner*, we find that appellant does not have the ability to meet her financial needs if required to pay the remaining portion of her attorney fees.

Based on the unique circumstances of this case, including the large amount of nonmarital property awarded directly to respondent, we find that the trial court's award of partial attorney fees to appellant was error. We direct that respondent pay in full the $9718 bill submitted.

### DECISION

The trial court's valuation of the parties' property was not error. Evidence sup-

2. A second marriage for both parties, it lasted twelve years.

ported the trial court's division of marital and nonmarital property. The trial court did not err by failing to award appellant maintenance. On the facts of this case, the partial award of attorney fees to appellant was erroneous.

Affirmed in part and reversed in part.