# FREDERICK F. GAU AND OTHERS v. MARGARET C. HYLAND (ALSO KNOWN AS MARGARET C. HILLBURN) AND OTHERS. STATE, RESPONDENT.[1]

February 17, 1950.

No. 34,942.

*F. Gordon Wright, Arthur T. Nelson,* and *Roy Rendahl,* for appellants.

*Michael J. Dillon,* County Attorney, and *Frank J. Williams* and *John K. Harvey,* Assistant County Attorneys, for respondents.

[1]Reported in 41 N. W. (2d) 444.

236

PETERSON, JUSTICE.

This is a proceeding for the registration of title in which registration was granted, subject to a lien under M. S. A. 256.26 for old age assistance furnished to a predecessor in title of the applicants, which predecessor held in joint tenancy and predeceased her other joint tenant. Applicants appeal.

The question for decision is whether a lien for old age assistance furnished to a joint tenant owner of real property under a statute (§ 256.26) providing that the lien shall attach to all real property *then owned by the recipient,* including joint tenancy interests, and shall continue until the liability for the amount thereof is satisfied, survives the death of such tenant and is enforceable against the real property after his death.

In 1902, Anna Hyland acquired title to the real property, which consisted of a house and lot in Minneapolis. In 1935, by conveyance to a third party and conveyance back she created a joint tenancy with her daughter, Margaret. In 1936, Anna applied for old age assistance, which was granted. Anna died in 1947. Margaret survived her. At the time of Anna's death she had been furnished old age assistance amounting to $2,019, for which a lien had been filed. After Anna's death, Margaret filed the instruments required by § 600.21 to show the fact of Anna's death, and the termination thereby of the joint tenancy as proof that she (Margaret) had become the sole owner of the property as the survivor. Thereafter Margaret conveyed the property to applicants. In the proceedings for the registration of title under the Torrens system, the court below granted registration, subject to a lien for the old age assistance furnished to Anna.

Provision is made in M. S. A. c. 256 for the payment and administration of old age assistance. So far as here material, the statute provides that every person paid old age assistance shall first give the state a lien on all his property situated within the state (§ 256.26, subd. 3)[2]; that the lien shall attach to all real property

[2] Section 256.26, subd. 3. "No person shall be paid old age assistance without first giving the state a *lien* on all *his* property situate within the state as hereinafter provided." (Italics supplied.)

then *owned* by the recipient or thereafter acquired, including joint tenancy interests, and shall continue until the liability for the amount thereof is satisfied; that such lien shall take priority over other liens subsequently acquired, except in certain cases not here material; that in case of death of the recipient the debt secured by the lien shall be a claim against his estate after payment of expenses of administration, funeral expenses, expenses of last illness, debts having preference by the laws of the United States, and taxes (subd. 6)[3]; and that such lien shall be enforced in the manner provided by law for the enforcement of mechanic's liens upon real property (subd. 8).[4] While there has been no express showing that Anna gave the state a lien for the old age assistance furnished to her, it has been assumed that such was the fact as one precedent to the grant thereof.

Applicants contend that, since the lien attached only to Anna's joint tenancy interest, it expired at her death, and that thereupon Margaret's title, as that of the surviving joint tenant, became one in fee free of the lien against Anna's interest as a joint tenant. The state contends that, notwithstanding the provision of § 256.26, subd. 6, to the effect that the lien shall attach to the real property

[3]Section 256.26, subd. 6. "* * * It [the lien] shall attach to all real property *then owned by the recipient* or thereafter acquired, including joint tenancy interests, * * * be for such amount as may be paid the recipient as old age assistance, and continue until the liability for such amount is satisfied. Such lien shall take priority over all other liens subsequently acquired, except that such lien shall not take priority over the claims of children of the recipient for money actually expended by them in permanently improving the homestead of the recipient or in payment of the taxes or encumbrances thereon.

"In case of the death of the recipient the debt secured by such lien shall be a claim against *his* estate and, after expenses of administration, funeral expenses, expenses of last illness, and debts having preference by the laws of the United States, and taxes, shall have priority over all other debts." (Italics supplied.)

[4]Section 256.26, subd. 8. "Such liens, after filing, shall be enforced in the manner provided by law for the enforcement of mechanic's liens upon real property, * * *."

then owned by the recipient of old age assistance, the lien survived Anna's death; and that, because the cited section provides that the lien shall continue until the liability for the debt secured thereby is paid, it is enforceable, after the termination by death of Anna's (the recipient's) interest, against the real property, notwithstanding the fact that by her death the entire interest therein vested in Margaret, the sole surviving joint tenant.

■ In answering the question presented for decision, it is our duty to discover and effectuate the legislative intention manifested by the language of the statute. Section 256.26, subds. 3, 6, and 8, providing for the creation and enforcement of old age assistance liens, uses familiar legal terms and expressions such as "lien" and "joint tenancy interests" and applies well-established legal doctrines, such as those that the lien shall attach to real property— that is, real property *owned* by the recipient—and those relating to the duration, priority, and enforcement of liens. Our problem is to ascertain what ordinarily is meant by such terms. In so doing we may invoke the aid of well-settled rules of statutory construction which shed light upon the question, such as those that the legislature is deemed to use words with their well-settled meaning, that statutes are to be construed with reference to the common law relative to the same subject matter, and that the contemporaneous legislative history may be considered. Stabs v. City of Tower, 229 Minn. 552, 40 N. W. (2d) 362; State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480; Foley v. Whelan, 219 Minn. 209, 17 N. W. (2d) 367; Washburn v. Van Steenwyk, 32 Minn. 336, 349, 20 N. W. 324, 326; 6 Dunnell, Dig. & Supp. § 8968; 50 Am. Jur., Statutes, §§ 259, 322.

■ The language of the statute must be construed in the light of well-settled rules governing joint tenancy, the severance thereof, liens upon the interest of one of the joint tenants, and the like.

A joint tenancy is characterized by four unities, viz.,—unity of interest, unity of title, unity of time, and unity of possession. If all these continued unsevered, the survivor of the joint tenants becomes the sole owner upon the death of the others. If, however, any one

of the unities is destroyed, the jointure is severed, with the consequence that what was a joint tenancy becomes a tenancy in common. Greiger v. Pye, 210 Minn. 71, 297 N. W. 173; Papke v. Pearson, 203 Minn. 130, 280 N. W. 183. The jointure may be severed either *voluntarily,* as by a conveyance of the interest of a joint tenant (Greiger v. Pye and Papke v. Pearson, *supra*); or by a partition by the joint tenants (14 Am. Jur., Cotenancy, § 14); or *involuntarily,* as by an execution sale of the interest of a tenant (14 Am. Jur., Cotenancy, § 14, *supra*).

In order to effect a severance of the jointure, the effect of the act or transaction, whether it is voluntary or involuntary insofar as the joint tenant is concerned, must be to divest him of his estate in joint tenancy. Coke upon Littleton (published in 1628), § 286, p. 184b; 2 Blackstone, Commentaries, p. 185; 2 Tiffany, Real Property (3 ed.) § 425. See, Opinion of Judge of Appeals Grant, in Power v. Grace [1932] 2 Dom. L. R. 793, 795, *et seq.* It became settled at an early date that the creation of a mere "charge" (as we shall show presently, a lien is only a charge) or "burden" upon the interest of one of the joint tenants, did not effect a severance of the jointure. This is the rule according to the citations from Coke and Tiffany, *supra*. Accordingly, a *lien* upon the interest of one of the joint tenants does not effect a severance of the jointure. Zeigler v. Bonnell, 52 Cal. App. (2d) 217, 126 P. (2d) 118 (judgment lien); Van Antwerp v. Horan, 390 Ill. 449, 61 N. E. (2d) 358, 161 A. L. R. 1133, and Annotation (judgment lien and levy under judgment without sale thereunder); Peoples Trust & Sav. Bank v. Haas, 328 Ill. 468, 160 N. E. 85 (judgment lien); Midgley v. Walker, 101 Mich. 583, 60 N. W. 296, 45 A. S. R. 431 (judgment lien); Musa v. Segelke & Kohlhaus Co. 224 Wis. 432, 272 N. W. 657, 111 A. L. R. 168, and Annotation (judgment lien); 2 Tiffany, Real Property (3 ed.) § 425, *supra*.

Because the interest of a joint tenant terminates at his death, a lien thereon does also and is unenforcable afterward. Zeigler v. Bonnell; Van Antwerp v. Horan; Peoples Trust & Sav. Bank v. Haas; Midgley v. Walker; and Musa v. Segelke & Kohlhaus Co.,

all *supra;* 1 Washburn, Real Property (5 ed.) p. 680, clause 15. In the Zeigler case, *supra,* the court said (52 Cal. App. [2d] 220, 126 P. [2d] 119) :

"* * * The judgment lien of respondent [creditor] could attach only to the interest of his debtor [a joint tenant], * * *. That interest terminated upon * * * [his] death. After his death there was no interest to levy upon."

The rule is thus stated in 14 Am. Jur., Cotenancy, § 107:

"* * * The mere docketing of a judgment against a joint tenant, even though a lien results therefrom, does not result in a severance of a joint estate. Accordingly, the death of the judgment debtor before anything more is done results in a loss of any rights under the judgment because the property right on which the judgment was a lien is gone and vested in the survivor. Such lien is terminated notwithstanding a statute providing that after the expiration of one year from the death of a judgment debtor execution may be issued against any property upon which the judgment is a lien, in the same manner and with the same effect as if he were still living."

A *lien* upon land is a mere hold or claim thereon as security for some debt or charge of the lienor. Marquette Nat. Bank v. Mullin, 205 Minn. 562, 287 N. W. 233; Atwater v. Manchester Sav. Bank, 45 Minn. 341, 48 N. W. 187, 12 L. R. A. 741. A common definition of a *lien* is that it is a *charge* upon land for the payment of a debt or duty. 25 Wd. & Phr. (Perm. ed.) Lien, 228; 33 Am. Jur., Liens, § 2. A lien is in no sense an estate or interest in the land. Donohue v. Ladd, 31 Minn. 244, 17 N. W. 381; Brackett v. Gilmore, 15 Minn. 190 (245) ; Bidwell v. Webb, 10 Minn. 41 (59), 88 Am. D. 56; 4 Dunnell, Dig. § 5577.

The contemporaneous history of old age assistance legislation shows that the legislature intended that an old age assistance lien should be a mere *charge* or *claim* upon the recipient's real property and that it used the word "lien" as above defined with all that is implicit in the definition. L. 1929, c. 47, § 7, provided that the

district court could require the recipient to *transfer* absolutely to the county the title to his property. In enacting the present law, the provision for a *transfer* of the recipient's property was dropped, and in place thereof provision was made for a *lien* upon the recipient's real property for the amount of assistance furnished him. Thus, it is clear that the old age assistance lien was intended to be a lien in its legal and popular sense.

The provision of § 256.26, subd. 6, that an old age assistance lien "shall attach to all real property *then owned by the recipient* \* \* \*, including joint tenancy interests" (italics supplied), defines and limits the property chargeable with such a lien. It is to be remembered that the old age assistance lien is a statutory one. The property chargeable with a statutory lien and the character, conditions, and extent thereof are to be ascertained from the terms of the statute. 33 Am. Jur., Liens, § 26; 53 C. J. S., Liens, § 5. By express terms of the statute, an old age assistance lien attaches to "real property" and to only such thereof as is "owned by the recipient." By the clearest implication, the lien does not attach to other kinds of property or to property not owned by the recipient. Thus, a legislative intention is evinced to make such a lien a charge only upon whatever interest in real property the recipient owns and, where there are several interests owned by several parties, as in cases of joint tenancy, tenancy in common, and others, to make the lien a charge only upon the interest owned by the recipient, and not upon the interests owned by others. Where the recipient is one of several joint tenants, the lien attaches only to his interest. See authorities *supra*. As said in Musa v. Segelke & Kohlhaus Co. 224 Wis. 435, 272 N. W. 658, *supra:*

"\* \* \* a judgment becomes a lien upon such interest only as the judgment debtor actually had in the premises at the time when it was docketed or thereafter acquired therein, prior to its expiration. \* \* \*

\*   \*   \*   \*   \*

"Consequently, the lien of the judgment in question could attach only to such interest or estate as Adam Musa actually and effective-

ly had in the premises. However, as his interest or estate continued to be that of a joint tenant, while he was alive, it was at all times subject to and limited by the right of survivorship, which is a special incident of every joint tenancy, and by reason of which, on the death of one joint tenant, his interest goes to his survivor."

For like reasons, an old age assistance lien upon real property owned by the recipient of such assistance, where he is one of several owners of the property in joint tenancy, attaches to only the joint tenancy interest *owned* by him, which is, as the Musa case points out, one subject to and limited by the right of survivorship in every case of joint tenancy. That is the plain meaning of the language of the statute. To hold otherwise would impute to the legislature not only a plain misuse of language having a well-settled meaning, but also an incompetency, which the advised use of the language belies.

An intention that the interests of joint tenants other than the one receiving the assistance shall be chargeable with a lien for assistance furnished to him and not to them is not manifested by the provision in the same section (§ 256.26, subd. 6) that an old age assistance lien shall continue until it is satisfied. This provision relates exclusively to the *duration* of the lien—to the *time* element involved. The provision considered in the preceding paragraph relates exclusively to the *property* to which the lien attaches—to the *subject matter* thereof. Both are necessary in creating a statutory lien. Both have their proper application. The one defining the duration of the lien does not make the lien operative upon property not specified in the one defining the property to which it attaches. Thus, the provision defining the duration of the lien cannot be held to make property or interests chargeable with the lien which are not included in the provision defining the property chargeable therewith. That is precisely what would happen if, absent a severance of the jointure during the lifetime of the joint tenant whose interest is chargeable with the lien, the lien were held to be enforceable against the other joint tenants. All this must

have been obvious to the legislature. By providing that an old age assistance lien shall attach to the joint tenancy interest *owned* by the recipient, it in effect enacted that such a lien shall have the same effect as any other lien. The fact that the legislature did not make different provisions concerning the nature, operation, and effect of old age assistance liens is convincing proof that it but applied to them well-settled rules applicable to other liens upon the interest of one of several joint tenants.

The provision that an old age assistance lien shall continue until satisfied does not effect a severance of the jointure. It is to be presumed that when the legislature provided for such a lien upon the interest of a joint tenant it did so with full knowledge of the incidents and effect of any lien upon a joint tenancy interest. As we have already mentioned, a lien upon the interest of one joint tenant does not of itself effect a severance of the jointure and terminates at his death, unless during his lifetime it is enforced by sale under execution of his joint tenancy interest to satisfy the judgment. See authorities *supra*. In Musa v. Segelke & Kohlhaus Co. *supra,* the court said of a judgment lien (224 Wis. 437, 272 N. W. 658) :

"* * * no precedent has been found to the effect that an effective severance of a joint tenancy occurs by reason of merely the lien which exists as the result of the docketing of a judgment."

By parity of reasoning, an old age assistance lien upon the interest of one joint tenant also does not effect a severance of the jointure. Because an old age assistance lien does not differ from other liens, the rule applicable to other liens, that a lien upon the interest of one joint tenant does not effect a severance of the jointure, applies.

In the Musa case, it was held that, under a statute continuing a judgment lien *after* the death of the judgment debtor, a judgment lien upon the interest of one of several joint tenants did not effect a severance of the jointure. The statute there presented a stronger case than does the instant one for holding that the lien effected a severance of the jointure and was enforceable against the joint property, for the reason that there the statute contained an express

provision for enforcement of the lien against the property after death, whereas the statute here involved contains no such provision. The Musa case is authority for the rule that the duration of a lien and the severance of a jointure are unrelated matters and that statutory provisions pertaining to the former have no effect upon the latter. There, it was held that, although the statute provided that the lien should continue for ten years and that after one year from the death of the judgment debtor execution might be issued against any property upon which the judgment was a lien in the same manner and with the same effect as if he were still living, a judgment lien upon the interest of one joint tenant terminated with his death; and that afterward, because of the termination of the joint tenancy by the death of the joint tenant against whose interest the judgment was a lien, the survivorship of the other joint tenants, and their succession as such to the entire title of the property by virtue of the joint tenancy, there was nothing upon which the judgment lien in question could operate. See, 14 Am. Jur., Cotenancy, § 107, notes 11 and 12.

The provision that an old age assistance lien shall continue until it is satisfied is a departure from the general public policy of limiting the time within which rights may be enforced and was enacted not to change the rules as to joint tenancies, liens thereon, severance of jointure, and the like, but to remove doubt as to whether the lien might terminate by mere lapse of time. Generally, there is a time limitation on the enforcement of liens. In the case of a judgment this is ten years. See, 3 Dunnell, Dig. & Supp. § 5150. The provision for duration of old age assistance liens until satisfied was designed to remove all time limits on their enforcement. No one would ever suppose that, because a judgment lien is operative upon the property of the judgment debtor for a definite period (ten years), it would, if the judgment lien was upon the interest of one joint tenant, operate to sever the jointure. Likewise, a mere lien of indefinite duration does not do so.

It is not necessary to add much concerning the provisions relative to the priority and enforcement of old age assistance liens, ex-

cept that the presence of such provision is convincing proof of a legislative intention that, among the incidents and rules applicable to old age assistance liens, were those concerning survivorship, severance of jointure, and liens, including the enforcement and the satisfaction thereof. Implicit in all this is the specific rule that, unless during the lifetime of the joint tenants against whose interest the lien attached proceedings are had for a sale of his interest, with resulting severance of the jointure, the lien terminates with the joint tenant's death and is unenforceable afterward.

The case of Goff v. Yauman, 237 Wis. 643, 298 N. W. 179, 134 A. L. R. 952, is contra and is cited as compelling a conclusion contrary to our decision. It was there held under similar statutory provisions that an old age assistance lien effected a severance of the jointure during the old age assistance recipient's lifetime and thereby made the lien enforceable against the land after his death. We deem the decision in the Goff case unsound, and we refuse to follow it, for the reason that it runs counter to well-established rules governing liens upon the interests of joint tenants, which have endured for centuries—at least from Lord Coke's time (1628), and before, to the present day. The rule of the Goff decision soon after its rendition was changed by statute. Laws Wisconsin 1945, c. 549. Our disapproval of the case as an authority is entirely aside from the legislative act overruling it.

The instant type of case is to be distinguished from those in which the joint tenant who was the old age recipient *survived* the other joint tenants and, as such sole survivor, became the sole owner of the land. In such a case, the lien upon the interest of the recipient as a joint tenant is not terminated by the death of the others, but continues against whatever estate or interest to which the recipient's interest has been changed by reason of his sole survivorship.

Our conclusion is that the old age assistance lien upon Anna's joint tenancy interest continued during her lifetime; that it did not effect a severance of the jointure between Anna and Margaret, the other joint tenant; that the lien terminated with Anna's death; that thereupon Margaret, as the surviving joint tenant, took the

entire title free of the lien; and that title to the land should be registered free from any lien claimed for old age assistance furnished to Anna.

Reversed with directions to proceed in accordance with the opinion.

MR. JUSTICE MATSON took no part in the consideration or decision of this case.