**STATE BANK OF PENNOCK, Appellant,**

v.

**Philip J. SCHWENK, Louis Gerken, et al., William W. Thompson, Swift County, Cohen & Gomsrud, Richard G. Gomsrud, United States of America, State of Minnesota, Marion Schwenk, a.k.a. Marion R. Schwenk, Philip L. Schwenk, a.k.a. Philip Schwenk, Jr., Respondents.**

No. C7–86–798.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Review Denied Nov. 26, 1986.

Donald M. Spilseth, Anderson, Burgett & Spilseth, Willmar, for State Bank of Pennock.

Lawrence D. Olson, Roseville, for Philip J. Schwenk.

Donald L. Maland, Montevideo, for Louis Gerken, et al.

David C. Moody, Schmidt, Thompson, Thompson, Johnson & Moody, P.A., Willmar, for William W. Thompson.

John W. Riches II, Swift Co. Atty., Benson, for Swift County.

Lawrence D. Cohen, Bloomington, for Cohen & Gomsrud.

Richard G. Gomsrud, St. Paul, pro se.

Robert M. Small, U.S. Dist. Attys. Office, Minneapolis, for U.S.

Hubert H. Humphrey III, Atty. Gen., Neil F. Scott, Asst. Atty. Gen., St. Paul, for State of Minn.

John W. Riches II, Swift Co. Atty., Benson, for Marion Schwenk.

Philip L. Schwenk, pro se.

Heard, considered, and decided by NIERENGARTEN, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

WOZNIAK, Judge.

Pennock State Bank brought an action for foreclosure by action of respondent Philip Schwenk's mortgage and also to determine the priority and validity of other liens attached to the property. The trial court stayed foreclosure of Philip Schwenk's mortgage and held respondent Marion Schwenk's lien, acquired by dissolution judgment, prior to Pennock State Bank's mortgage lien. We reverse.

## FACTS

Philip and Marion Schwenk were married on January 12, 1952. They resided in Swift County, farming and operating an aerial spraying business.

In 1980, Marion Schwenk commenced a dissolution proceeding against her husband Philip Schwenk in Swift County Court. The trial court issued a temporary order in the dissolution proceeding, dated February 26, 1980, which included a provision prohibiting Philip and Marion from "damaging, selling, transferring or encumbering any of the assets of the parties herein except in the ordinary course of business and except as may be mutually agreed upon by the parties."

The dissolution action was tried on July 14, 1982. As part of the dissolution decree of November 24, 1982, the trial court awarded Marion $100,000, plus interest, to be paid in annual installments of $25,000. In addition, the Conclusions of Law provided "petitioner shall have a lien against all three parcels of real estate to secure the payment required herein." The court awarded the parties' real property to Philip. Marion's lien against Philip's property was recorded on December 2, 1982.

The real property which the court awarded to Philip consisted of three separate parcels of land which Philip had acquired during the course of his marriage to Marion. As of the dissolution trial date, Philip held title to each of these parcels in his name only.

The parcel of land which is the subject of Pennock Bank's foreclosure action was purchased by Philip and his brother Joseph pursuant to a contract for deed dated July 22, 1968 from Louis and Louise Gerken.

One of the remaining parcels was acquired by Philip in 1966. This parcel was the Schwenk's homestead. The third parcel was acquired by Philip under a contract for deed from Wayne and Patricia Carpenter dated March 19, 1979. Neither the homestead property nor the Carpenter property is the subject of this litigation.

On January 2, 1981, Philip individually signed a note in the amount of $160,000 made payable to Pennock Bank. Pennock Bank advanced Philip $157,960 to pay off prior notes which were incurred for agricultural and aerial spraying business needs. Pennock Bank advanced $2,430.90 to cover Philip's final payment due on the Gerken contract for deed.

On April 3, 1981, Philip individually signed and delivered to Pennock Bank a separate mortgage for each of the three parcels of land he owned, including a mortgage on the subject property. Pennock Bank recorded the mortgages on April 9, 1981.

The note was signed and the mortgages executed and filed after the trial court issued its restraining order in the dissolution proceeding, but prior to the final dissolution decree.

On January 21, 1981, Louis and Louise Gerken executed a Warranty Deed in favor of Philip Schwenk in consideration for Philip's final payment on the property. This deed was delivered sometime after that date when the final contract payment was actually paid. On the same date, Joseph Schwenk quit-claimed his interest in the property to his brother Philip.

On March 3, 1983, Pennock Bank brought this action for foreclosure by action of Philip's mortgage and also to determine validity and priority of Marion's and other respondents' claimed liens. Counsel stipulated to and submitted a Statement of Facts to the court. Based upon these

facts, the trial court issued an Order for Interim Judgment setting forth a priority of claims.

The trial court found that Marion's lien had priority over the nonpurchase money portion of Pennock Bank's mortgage lien. It found the purchase money portion of Pennock Bank's mortgage lien had priority over Marion's lien. The trial court reasoned that Marion had a common ownership interest in property acquired during the marriage and that Pennock Bank's mortgage did not attach to this interest. Finding that Marion's lien was a continuation of that ownership interest, the trial court, in effect, transferred the superiority of her common ownership claim over Pennock Bank's mortgage to her lien.

The trial court issued its final order on March 26, 1986, allowing a foreclosure sale on any date after April 24, 1986, with the proceeds to be applied to the liens in order of the priority established in its order. Judgment was entered on April 16, 1986. Pennock Bank appeals the final judgment pursuant to Minn.R.Civ.P. 103.

### ISSUE

Was the trial court clearly erroneous in holding that the judicial lien created in favor of Marion Schwenk as a result of the dissolution judgment had priority over the nonpurchase money portion of the mortgage lien in nonhomestead property owned by her husband and mortgaged by him during the marriage?

### ANALYSIS

■ The ultimate issue in this case necessarily involves an analysis of Marion's property interest in the subject property. Those rights are addressed in Minn.Stat. §§ 507.02 and 518.54, subd. 5 (1984). Section 507.02 provides, in part:

A husband and wife, by their joint deed, may convey the real estate of either. *The husband, by his separate deed, may convey any real estate owned by him, except the homestead, subject to the rights of his wife therein;* and the wife, by her separate deed, may convey any real estate owned by her, except the homestead, subject to the rights of the husband therein; and either husband or wife may, by separate conveyance, relinquish his or her rights in the real estate so conveyed by the other.

*Id.* § 507.02 (emphasis added). Under this statute, Pennock Bank took its mortgage, without Marion's signature, subject to her rights in the property.

While section 507.02 mandates that the "rights of the wife" are protected from conveyance by the husband, it does not, however, define those rights. *Id.*

■ Section 518.54, subd. 5 broadly defines a spouse's rights in marital property.

All property acquired by either spouse subsequent to the marriage and before a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in a form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. *Each spouse shall be deemed to have a common ownership in marital property that vests not later than the time of the entry of the decree* in a proceeding for dissolution or annulment. The extent of the vested interest shall be determined and made final by the court pursuant to section 518.58. The presumption of marital property is overcome by a showing that the property is nonmarital property.

*Id.* § 518.54, subd. 5 (emphasis added). Under Minnesota law, a spouse has "common ownership" rights in marital property even though the other spouse holds title individually. In this case, before the dissolution judgment and at the time Pennock Bank accepted the mortgage and the note without Marion's signature, Marion had a common ownership interest in the property. Moreover, Marion held the common ownership interest in the subject property free from her husband's control. *Id.* § 519.02.

■ Sections 507.02, 518.54, subd. 5, and 519.02, taken together, demonstrate that, prior to dissolution, Pennock Bank's mort-

gage did not attach to Marion's common ownership interest. *Id.* §§ 507.02, 518.54, subd. 5, and 519.02. Therefore, before the dissolution decree, her common ownership interest was prior and superior to Pennock Bank's mortgage.

The question is whether Marion's lien can bootstrap its priority to the date she acquired ownership interest. Marion argues that the lien created by the family court to protect her interest in the property simply recognized, and provided a remedy to enforce, her pre-existing property right. Since her lien was a continuation of her property interest, she argues, it too should be prior to Pennock Bank's interest.

 Neither the facts nor the law would suggest that a lien is a continuation of a property interest. The facts in this case show that Marion retained no ownership interest in the property after the entry of the dissolution decree. The court awarded Philip all real property. Essentially, Marion's pre-existing interest in that property and in all other marital real property was dissolved by the dissolution decree. In its place, the court awarded her $100,000 secured by a lien on all Philip's property. Marion's lien was not a property interest, but simply collateral for a debt. *See Boyd v. Robinson*, 741 F.2d 1112, 1115 (8th Cir.1984) (Ross, J., dissenting). Factually, her lien on the property was not a continuation of her common ownership interest, but represented a security interest on her entire marital award.

 Under Minnesota law, a lien is a "*charge* upon land for the payment of a debt or duty. * * * A lien is [in] no sense an estate or interest in the land." *Application of Gau*, 230 Minn. 235, 240, 41 N.W.2d 444, 448 (1950) (citations omitted; emphasis in original). Because the lien is not an interest in real property, its priority cannot be established by relating back to the superiority of the lienholder's prior ownership interest.

The priority of Marion's lien is decided by the general rule governing priority of mortgages and judgment liens. That rule provides that an earlier recorded mortgage will prevail over a later rendered judgment. 8A G. Thompson, *Commentaries on the Modern Law of Real Property* § 4425, at 211–12 (1963); *see Bank of Ada v. Gullikson*, 64 Minn. 91, 94, 66 N.W. 131, 132 (1896); 3 R. Powell, *Real Property* § 479, at 715 & n. 5 (1986). Thus, when Pennock Bank filed its mortgage on April 3, 1981 and Marion filed her lien on December 2, 1982, Pennock Bank's mortgage was superior.

## DECISION

The trial court's order staying foreclosure is lifted based on the trial court's erroneous finding that Marion's lien was superior to the nonpurchase money portion of Pennock Bank's mortgage.

Reversed.