**G.A. REDDING and Windom State Bank, Appellants,**

v.

**Louise Ann OLDEWARTEL, Respondent.**

**No. C4-87-655.**

Court of Appeals of Minnesota.

Aug. 25, 1987.

Review Granted Oct. 28, 1987.

Jack M. Fribley, Faegre & Benson, Minneapolis, for appellants.

Lisa E. Doering, Jaycox Law Offices, Ltd., Bloomington, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN,* JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

A. PAUL LOMMEN, Acting Judge.

Appellants seek reversal of the trial court's judgment holding that a judicial lien granted respondent in 1986 was prior to pre-existing liens granted appellants Windom State Bank and G.A. Redding in 1985. We affirm.

## FACTS

The marriage of James R. Redding ("James") and respondent Louise Oldewurtel was dissolved by judgment and decree dated September 4, 1984. In its August 24, 1984 findings, conclusions and order for judgment, the trial court ruled that the farm in which James and his sister each had an undivided one-half interest, was nonmarital property. All interest in the farm was awarded to James, and respondent was ordered to execute a quit claim deed to the property within ten days of the entry of judgment. On December 13, 1984, respondent quit claimed her interest in the farm to James.

The August 24, 1984 order also provided that 2,635 shares of Windom State Investment Co. ("WSIC") stock was nonmarital property and awarded it to James. The court found that 1,830 shares of WSIC stock and 100 shares of Windom State Bank ("Bank") stock was marital property, and awarded 915 shares of WSIC and 50 shares of Bank stock to each party. A November 1984 amended judgment made no substantive changes but clarified the conditions on stock ownership.

On December 4, 1984, the court entered an amended judgment and decree awarding all marital stock to James, and ordering him to pay respondent $257,705 within six months. James filed an appeal that same day, and on July 22, 1985, the court of appeals affirmed the trial court's finding as to the nonmarital nature of a portion of the stock, but remanded the case for reconsideration of the length of time for James' payment to respondent. *Redding v. Redding,* 372 N.W.2d 31 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 18, 1985).

On March 25, 1985, during the pendency of the appeal, James and his sister gave a mortgage on the nonmarital farm in the amount of $140,000 to the Windom State Bank. The mortgage was duly recorded on April 2, 1985. James was at that time, and still is, an officer, director, and shareholder of the Bank. The proceeds of the mortgage were used to pay off a farm operating loan, an existing mortgage, a loan from James' father, and to pay off the co-owner. The remainder was retained by James to repay a part of the mortgage and to pay off other farm-related debts.

Also during pendency of the appeal, on June 28, 1985, James encumbered 3,550 shares of WSIC stock and 50 shares of Bank stock which consisted of nonmarital and marital property, to G.A. Redding, his father, for $15,000. This encumbrance was against 2,635 nonmarital shares and 915 (one-half) marital shares in the WSIC and 50 (one-half) marital shares of the Bank stock. G.A. Redding was the majority stockholder in both the Windom State Investment Company and the Windom State Bank. On November 4, 1985, James encumbered the above-mentioned stock again to his father G.A. Redding, in the amount of $5,000. With this encumbrance, a total of $100,000 was advanced by the father, G.A. Redding, in consideration of a mortgage on the aforementioned stock. James had contended during the dissolution proceeding that this stock had no value. The $100,000 that was loaned by G.A. Redding was used by James to pay respondent for her interest for the household goods and appliances, to pay off his father on a contract for deed on James' home, to pay off a prior mortgage, and for payment of attorney's fees regarding the dissolution action.

On November 4, 1985, James filed a Chapter 11 Bankruptcy petition. This petition was dismissed by the bankruptcy court on March 11, 1986. On April 15, 1986, the trial court held the remand hearing at which time it ordered James restrained from transferring or encumbering any property.

On May 28, 1986, the trial court entered its order that James pay respondent $100,-

000 within 120 days and the balance of $232,705 plus interest and attorney's fees over the next ten years. The court also provided that this judgment was to be secured by all of James' bank stock, holding company stock, and real estate, including the farm.

On June 2 and June 6, 1986, respondent filed a lien against all the real estate and requested stock certificates to perfect the lien against the Bank and WSIC stock. James refused to provide stock certificates to perfect the lien. (His father, G.A. Redding, had possession of them.)

In August of 1986, after the stays of the appeals, and the bankruptcy stays were lifted, the dissolution as to the property rights became final. On August 7, 1986, James filed for bankruptcy under Chapter 7. The bankruptcy court determined that the issue of the priority of the liens between respondent, James' father G.A. Redding, and the Bank should be determined by the trial court.

The trial court allowed respondent to bring in as third party defendants the Windom State Bank, the Windom State Investment Co. and G.A. Redding to determine priority of liens as to the real estate mortgage by James on or about March 25, 1985, and the encumbrance of the WSIC and Bank stock. (There had been prior attempts by respondent to bring in the third party defendants which have been previously denied by the trial court.) Respondent then commenced its third party action.

Both respondent and appellants argued separate motions for summary judgment. By the judgment appealed, the court granted respondent's summary judgment, ordering her lien interests in the encumbered farmland and stock to be superior to appellants' interests and ordering G.A. Redding to turn over to respondent possession of the stock to perfect her lien. Additionally, Windom State Investment Company was dismissed.

## ISSUE

Did the trial court err in ruling that respondent's subsequently granted judicial lien given to secure judgment in a dissolution action, had priority over appellants' lien interests?

## ANALYSIS

### JURISDICTION

Appellants argue that the trial court should not have treated this joinder and lien priority action as a continuation of the dissolution action. Appellants argue that respondent should have commenced a separate action against appellants, and that the trial court's ruling on the issue of priority as if it was still sitting as judge in the dissolution action was "clearly impermissible" and in itself mandates reversal. Appellants' argument does not rest on a lack of jurisdiction so much as it is a belief that the trial court's feelings of animosity from the dissolution action carried over into this lien priority action, impermissibly influencing its decision.

■ We believe, however, that the trial court had jurisdiction to decide this matter through its inherent power to interpret and enforce the dissolution decree. *See Haala v. Haala,* 387 N.W.2d 678, 679 (Minn.Ct. App.1986) (county court had jurisdiction to interpret and enforce provision of dissolution judgment concerning specific performance of a contract for the sale of land even though it generally lacked jurisdiction over cases involving title to land); *Lenzmeier v. Lenzmeier,* 304 Minn. 568, 231 N.W.2d 71, 74 (1975) (under Minn.Stat. § 484.64 district court had power to hear matters involving property of parties to divorce).

In addition, the joinder of appellants reduces the multiplicity of lawsuits which would result if respondent were forced to institute independent legal proceedings. *See Kirsch v. Skow,* 305 Minn. 328, 333, 233 N.W.2d 732, 735 (1975) (rules on joinder should be liberally construed to reflect strong public interest in favor of having one suit on essentially the same issues).

■ Further, we note that appellants may not raise the issue of judicial bias for the first time on appeal. *Gummow v. Gummow,* 375 N.W.2d 30, 34 (Minn.Ct. App.1985). Appellants did not raise this

issue below, nor did they ask the judge to recuse himself or file an affidavit of prejudice with the court.

## STANDARD OF REVIEW

■ In reviewing the granting of summary judgment, it is the function of this court only to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (1979); Minn.R.Civ.P. 56.03. In addition, this court need not defer to the trial court in reviewing questions of law. *Van de Loo v. Van de Loo,* 346 N.W.2d 173, 175 (Minn.Ct.App. 1984). We must, however, remember that in dissolution actions the courts are guided primarily by principles of equity with relief granted as justice requires. *See Johnston v. Johnston,* 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968).

### Mortgage

Appellants argue that the Bank's mortgage has priority over respondent's subsequently granted judicial lien as a matter of law, citing *State Bank of Pennock v. Schwenk,* 395 N.W.2d 371 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Nov. 26, 1986).

> Under Minnesota law, a lien is a *"charge* upon land for the payment of a debt or duty. * * * A lien is [in] no sense an estate or interest in the land." *Application of Gau,* 230 Minn. 235, 240, 41 N.W.2d 444, 448 (1950) (citations omitted; emphasis in original). Because the lien is not an interest in real property, its priority cannot be established by relating back to the superiority of the lien holder's prior ownership interest.
>
> The priority of (the wife's) lien is decided by the general rule governing priority of mortgages and judgment liens. That rule provides that an earlier recorded mortgage will prevail over a later rendered judgment.

*Id.* at 375 (citations omitted).

Respondent acknowledges the general rule of lien priority and the holding in *Pennock,* but argues that she is still entitled to priority since:

> a) appellants were not good faith purchasers and so are precluded from asserting priority under Minn.Stat. § 507.-34, and
>
> b) the general rule of priority does not apply here because there are intervening equities arising from appellant's actual notice of a prior interest.

#### a) *Good Faith Purchaser*

Minn.Stat. § 507.34 provides in part:

> Every conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded, * * *.

Respondent argues that since the Bank was not a purchaser in good faith *Pennock* does not apply, and its lien is inferior to her prior unrecorded lien. This argument assumes that the Bank was not a purchaser in good faith, and that respondent has a prior interest in the property.

■ Respondent contends the Bank was not a bona fide purchaser, or in the words of the Recording Act, "a subsequent purchaser in good faith and for a valuable consideration." Such a purchaser is defined as one who gives consideration in good faith, without actual, implied, or constructive notice of inconsistent outstanding rights of others. *Anderson v. Graham Investment Co.,* 263 N.W.2d 382, 384 (Minn.1978), citing *Bergstrom v. Johnson,* 111 Minn. 247, 250, 126 N.W. 899, 900 (1910). Contrary to appellant's argument that only "actual" notice precludes bona fide purchaser status, a purchaser who has implied or constructive notice of outstanding rights is similarly precluded from bona fide purchaser status. *Anderson,* 263 N.W.2d at 384.

■ Appellants argue that the trial court erred in finding that the Bank was not a good faith purchaser, because the Bank

could not be charged with James' knowledge of the dissolution proceedings. As stated in *Bang v. Brett*, 62 Minn. 4, 6, 63 N.W. 1067, 1068 (1895) as a general rule, a corporation is not charged with knowledge of an officer where he is dealing with the corporation in an adversary capacity or on personal matters. However, this rule does not hold true if the corporation consists wholly of those dealing with it and others having notice of inconsistent claims; *Hunt v. Nevada State Bank*, 285 Minn. 77, 106, 172 N.W.2d 292, 309 (1969), *cert. denied, Burke v. Hunt*, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). This court previously accepted and noted the fact that the Bank was a "family corporation," *Redding*, 372 N.W.2d at 33.

■ From the undisputed facts here, including that James Redding was an officer and director of the Bank (a closely held corporation with the majority of stock held by the Redding family), and James' father, G.A. was president and chairman of the board, it is clear the Bank had notice of the dissolution proceeding; the question then becomes—was notice of the dissolution proceeding and its outcome notice of "outstanding rights of others"? At the time of the mortgage, the farm had been declared nonmarital property and respondent had executed a quit claim deed, extinguishing any rights she may have had in the property. However, James and G.A. Redding as officers of a bank (and thus the Bank) were not unschooled in the world of creditors' and debtors' rights. They were obviously aware of respondent's possible future rights should she obtain a lien to secure payment of the judgment she had been granted. While this was knowledge of possible future rights and not currently "outstanding rights," it is knowledge of a kind precluding good faith purchaser status. Indeed, it was this apparent knowledge of possible future encumbrance of the property and how to avoid it, which the trial court imputed to appellants in noting that the 1985 transactions were not made in good faith.

It is clear, however, that under *Pennock*, respondent did not have an interest in the property at the time of the mortgage by virtue of her later granted lien. *Pennock*, 395 N.W.2d at 375. Likewise, she did not have an ownership interest under Minn. Stat. § 518.54, subd. 5 (1984) because that statute applies only to marital property and the farm was nonmarital property.

Therefore, while it appears appellant Bank lacked good faith in its purchase of the farmland from James, in that the transaction was obviously one to avoid a future encumbrance of the property, § 507.34 does not preclude its lien priority status. The statute will not operate to subordinate a subsequent purchase in bad faith unless there has been *a prior conveyance of real estate*. While respondent may have had a lien upon the real property as security for James' debt, this does not equate with an interest in the real property.

■ b) Respondent claims that the general rule of lien priority does not apply if there are intervening equities arising from actual notice of pre-existing interests.

Until the time for appeal had passed and the dissolution became final, the court retained jurisdiction over the entire estate of respondent and James Redding. *Boom v. Boom*, 367 N.W.2d 536 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. June 27, 1985). During that time the distribution of property, including nonmarital property, could have been changed. Appellants were closely connected to the trial and the deliberate maneuvering of the properties. They did not act in good faith. Under the circumstances, the trial court should exercise its broad equitable powers to grant appropriate relief. Indeed, the supreme court has stated:

> Although dissolution is a statutory action and the authority of the trial court is limited to that provided for by statute, *Melamed v. Melamed*, 286 N.W.2d 716, 717 (Minn.1979), the district courts are guided by equitable principles in determining the rights and liabilities of the parties upon a dissolution of the marriage relationship. *Christenson v. Christenson*, 281 Minn. 507, 513, 162 N.W.2d 194, 198 (1968). The district court therefore has inherent power to

grant equitable relief "as the facts in each particular case and the ends of justice may require." *See Johnston v. Johnston*, 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968).

*DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755, 757–58 (Minn.1981); *see also Beede v. Law*, 400 N.W.2d 831, 834 (Minn.Ct.App.1987) courts have inherent power to grant equitable relief in dissolution actions); *Scott v. Scott*, 373 N.W.2d 652, 654 (Minn.Ct. App.1985) (trial court can grant relief in dissolution cases that is required to justly deal with interests of the parties).

## STOCK

■ The trial court similarly ruled that respondent's judicial lien granted in 1986 was superior to G.A. Redding's security interest in the stock, obtained in 1985. In so ruling, the trial court relied on the same principles supporting its grant of priority over the mortgage, including its retention of jurisdiction on pending finality of the dissolution proceedings, and G.A. Redding's imputed knowledge of the dissolution proceedings and pending judgment.

We believe the trial court's determination was correct. In anticipation that the court would change the valuation of the stock (one of the issues on appeal was valuation of the stock), James tried to put it out of respondent's reach. His and appellant's actions were designed to encumber assets in such a way as to preclude enforcement of the court's division of property. The court, having seen through this, awarded relief as it saw fit.

## DECISION

The trial court did not err in granting equitable relief by subordinating appellants' lien to respondent's subsequently granted judicial lien since it was clear appellants acted in bad faith in obtaining their liens.

Affirmed.

CRIPPEN, J., specially concurs.

CRIPPEN, Judge, concurring specially.

I concur with the decision of the majority.

The controversy here prompts new attention to our decision in *State Bank of Pennock v. Schwenk*, 395 N.W.2d 371 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. Nov. 26, 1986). We held in *Pennock* that the spouse's inchoate interest in marital property lapses upon dissolution of the marriage, even though the spouse is given lien rights in the property to secure payment of an award made as an alternative to actual division of assets. It follows that the lien has priority only as to those purchasers or lienholders whose rights arise after the spouse's financial lien is perfected.

Good faith purchasers are protected as against any unrecorded interest. Whether or not purchasers are in good faith, they are protected by *Pennock*, and I do not subscribe to the rationale leading to this result. The spouse's court-created equitable lien is the embodiment of legislated property interests. *See* Minn.Stat. § 518.-54, subd. 5 (1986) (each spouse "deemed to have a common ownership in marital property that vests not later than the time of the entry of the decree" in a dissolution proceeding); Minn.Stat. § 518.58 (1986) (substantial contributions of each spouse to acquisition of property "conclusively presumed"). *See also S.E.C. v. Flight Transportation Corp.*, 699 F.2d 943, 949 (8th Cir.1983) (spouse's inchoate interest preceding dissolution entitles the spouse to intervene in S.E.C. receivership proceedings).

Even as to property eventually adjudicated to be nonmarital, the spouse has inchoate interests prior to dissolution and the completed division of assets. All property acquired during the time of marriage is presumed marital until otherwise decreed. Minn.Stat. § 518.54, subd. 5. In appropriate cases, nonmarital property may be divided between spouses or serve as a basis for offsetting an alternative award. Minn. Stat. § 518.58. Nonmarital property may be encumbered to secure financial obligations created in a dissolution decree. Minn.Stat. §§ 518.24 (1986) (security for

support and maintenance), 518.57 (1986) (security for support), 518.58 (division of assets), 518.61 (1986) (trusteeship for payment of support or maintenance), 518.65 (1986) (property sale or partition).

Dissolution case lien interests of a spouse are real and genuine interests that must be protected to avoid abuse of rights absolutely pronounced by the legislature. They are more than mere collateral, the classification encompassing other liens. One who disregards inchoate interests of a spouse should not be heard to claim property interests superior to of rights granted by judicial authority to uphold the law.

It is evident that a spouse can take steps to protect inchoate interests during the pendency of proceedings. Here, for example, respondent could have been protected during the pendency of the appeal by obtaining and perfecting lien rights in the December 1984 judgment. In earlier stages of proceedings, it is imaginable that a party might obtain and record an order prohibiting the other spouse from transferring or encumbering property. *See* Minn. Stat. § 518.131, subd. 1(e) (1986). While these precautionary steps may be attempted, this does not justify a rule of law that seriously jeopardizes a spouse's interests whenever protective relief is not sought or obtained.