**In re the Marriage of Louise Ann OLDEWURTEL, a.k.a. Louise Ann Redding, Respondent,**

v.

**James Alan REDDING, Lower Court Respondent,**

**G.A. Redding, et al., petitioners, Appellants.**

**No. C4-87-655.**

Supreme Court of Minnesota.

April 8, 1988.

Rehearing Denied May 17, 1988.

Jack M. Fribley, Minneapolis, for appellants.

Lisa E. Doering, Lisa Ray, Bloomington, for respondent.

## OPINION

AMDAHL, Chief Justice.

This appeal represents another step in a protracted dissolution proceeding. The plaintiff, respondent, Louise Ann [Redding] Oldewurtel[1] brought a third-party action against the defendants, appellants G.A. Redding and the Windom State Bank, seeking a determination of the priority of various liens against the property of her former husband, James Redding. On cross-motions for summary judgment, the trial court found that Oldewurtel's judicial lien was superior to the appellants' security interests even though the security interests arose and were perfected approximately one year before the judicial lien was granted. The trial court then granted summary judgment to Oldewurtel based primarily on its equitable powers as a dissolution court. The court of appeals affirmed, finding that appellants acted in bad faith and holding that the trial court did not abuse its discretion. We granted the appellants' petition for further review. We reverse and hold that the appellants' valid security interests in the subject property take priority over the later granted judicial lien.

The facts and history of this case are complicated. A complete recitation of the facts surrounding the marriage dissolution can be found at *Redding v. Redding*, 372 N.W.2d 31 (Minn.App.1985). The facts which are pertinent to this appeal are as follows:

James Redding, his father (G.A. Redding) and other relatives were the majority owners of the Windom State Bank. James Redding was married to Louise Ann [Redding] Oldewurtel. The present dispute arose out of various transactions that took place between James Redding, G.A. Redding and the Bank during the pendency of James Redding and Oldewurtel's marriage dissolution.

In 1983, Oldewurtel sued James Redding to have their marriage dissolved. By Order filed September 4, 1984, the marriage was dissolved. The September 4, 1984 Order incorporated most of the findings of fact contained in a previous Order, filed August 29, 1984. The August 29, 1984 Order made numerous findings. Pertinent to the issues raised in this appeal, the following property was awarded:

1. "Farm"—this non-homestead piece of property owned by James Redding, jointly with his sister, was awarded to James Redding as nonmarital property.

2. Windom State Investment Company Stock "WSIC stock"—4465 shares
   a. 2635 shares of WSIC stock awarded to James Redding as nonmarital property.
   b. 1830 shares of WSIC stock divided equally as marital property (*i.e.*, 915 shares per spouse).

3. Windom State Bank Stock "WSB Stock"—100 shares of WSB stock divided equally as marital property (*i.e.*, 50 shares per spouse).

The fair market value of the farm was found to be $300,000. Based on evidence presented by Oldewurtel and at her strenuous urging, the court valued the WSIC stock at $227 per share for a total value of $1,013,555. The WSB stock was ascribed a value of $500 per share for a total of $50,000. James Redding objected to these valuations and argued that the WSIC stock was "literally valueless" and that the WSB stock was

---

1. In its opinion of this case, the court of appeals inadvertently misspelled the respondent's name as "Oldewartel."

worth substantially less. These valuations were ultimately upheld on appeal.

By order and judgment filed December 5, 1984, the trial court, on its own motion, amended its order by awarding all stock to James Redding and further ordered him to pay Oldewurtel $257,705 in lieu of the stock within six months. The cash award reflected the court-determined value of the stock previously awarded to her. This judgment was never docketed and did not give rise to a judgment lien, nor did the court make any provisions in its order for securing the judgment on Oldewurtel's behalf. Consequently, no lien arose against James Redding's property.

That same day (December 5, 1984), James Redding filed a notice of appeal to the court of appeals from the judgment entered on the September 4 order. In January 1985, he also appealed from the December 5, 1984 amended judgment. While the appeals were pending, Redding entered into several transactions. On or about March 22, 1985, Redding and the co-owners of the farm granted a mortgage to the Bank for $140,000. The mortgage was recorded on April 2, 1985. Between June 28, 1985 and November 4, 1985, James Redding borrowed a total of $100,000 from G.A. Redding, secured by the 50 shares of WSB stock and 3,550 shares of WSIC stock originally awarded to James Redding in the August 29, 1984 order. Neither the WSIC nor the WSB shares originally awarded to Oldewurtel were subject to the security agreements.

■ On July 30, 1985, the court of appeals rendered its decision in the dissolution action. As to the relevant property issues, the court affirmed. The court corrected a clerical error thus reducing the award from $257,705 to $232,705 and remanded the case for a hearing on certain time of payment issues. The remand hearing was held and on May 28, 1986, the trial court filed an order for judgment requiring James Redding to pay Oldewurtel $100,000 within 120 days and the remainder of the

$232,705 plus interest and fees over a ten year period. In its order, the trial court secured the judgment "by all of the Respondent's [stock] and real estate * * *." The record does not disclose whether this judgment was docketed but at least as against persons with actual notice, a lien arose on that date.

On August 7, 1986, James Redding filed for protection under Chapter 7 of the Bankruptcy Code.[2] On September 24, 1986, Oldewurtel moved the original trial court to add G.A. Redding and the Bank as defendants to the dissolution action for the purpose of determining whether her later-granted judicial lien (1986), of which appellants had actual notice, was superior to their earlier filed security interests (1985). On October 8, 1986, the bankruptcy court lifted the automatic stay for the limited purpose of determining lien priority under state law. Thereafter, on October 14, 1986, the trial court granted joinder of G.A. Redding and the Bank to the original action.

On November 10, 1986, Oldewurtel served G.A. Redding and the Bank with third party complaints. They jointly answered on November 26, 1986, denying liability but not raising any issue of improper joinder.

In December 1986, cross motions for summary judgment were filed on the issue of lien priority. On March 4, 1987, the trial court issued its findings and ruled for Oldewurtel. The trial court made no finding of bad faith; rather, it based its decision on its equitable powers as a dissolution court and its continuing jurisdiction over the marital estate. On appeal, the court of appeals affirmed. 411 N.W.2d 231. The court of appeals held that the defendants were on notice of Oldewurtel's "potential" interest in the property when the security interests were granted in 1985, had acted in bad faith, and that under the dissolution court's equitable jurisdiction, it was proper to grant priority to Oldewurtel's lien. On October 28, 1987, we granted the appellants' petition for further review and also

2. James Redding had previously, on November 5, 1985, filed for protection under Chapter 11 of the Bankruptcy Code. That petition was dismissed on May 11, 1986 because the court viewed it as an attempt to restructure personal debt rather than to reorganize a business.

granted amicus curiae status to the Minnesota Bankers Association. We reverse.

The court of appeals correctly found that the present action is the continuation of the underlying dissolution action. Appellants waived any issue they may have had as to improper joinder by not making timely and appropriate objection. *See Whipple v. Mahler,* 215 Minn. 578, 10 N.W.2d 771 (1943); *see also* Minn.R.Civ.P. 21; 1 D. Herr & R. Haydock, *Minnesota Practice,* § 21.3 (1985) (motion to dismiss for misjoinder should be raised at earliest practical time or party's apparent acquiescence in the misjoinder may be considered by trial court in deciding whether to drop party). No motion was brought below after joinder. Joinder issues may not be raised for the first time on appeal.

While it may have been more appropriate for Oldewurtel to have begun a separate action against appellants, the trial court had jurisdiction to hear the matter. While the dissolution court's jurisdiction is purely statutory, *see Warner v. Warner,* 219 Minn. 59, 17 N.W.2d 58 (1944), the trial court possesses wide discretion for those matters within its jurisdiction. *See Ruprecht v. Ruprecht,* 255 Minn. 80, 96 N.W. 2d 14 (1959). The dissolution statute grants the trial court the power to "make a just and equitable division" of marital property. Minn.Stat. § 518.58 (1986). In order to do so, the trial court must make findings concerning the marital character of the property and whether the division is just and equitable. This statutory grant is sufficient to allow the dissolution court jurisdiction to join the present appellants. *Cf. Murray v. Antell,* 361 N.W.2d 466, 468–69 (Minn.App.1985) (no abuse of discretion to join stepfather in father's motion for change of custody); *Culver v. Culver,* 572 S.W.2d 617, 622 (Ky.App.1978) (permissible to join husband's wholly owned corporation as party).

The dispute herein involves lien priority under Minnesota state law. The basic rule of lien priority law is simple and well-settled. That rule states that in disputes between creditors concerning a lien on the debtor's property, the first creditor to perfect the lien shall prevail. In other words, "the first lien in point of time takes precedence." 11A Dunnell Minn.Digest 2d *Liens,* 4.00 (1978).

Minnesota law has long held that a lien is not a property interest but rather is collateral for a debt. *Application of Gau,* 230 Minn. 235, 240, 41 N.W.2d 444, 448 (1950). "A lien is [in] no sense an estate or interest in the land." *Id.* This rule has been held to apply to liens created incident to a dissolution action. *State Bank of Pennock v. Schwenk,* 395 N.W.2d 371, 374–75 (Minn. App.1986); *see Boyd v. Robinson,* 741 F.2d 1112, 1115–16 (8th Cir.1984) (Ross, J., dissenting) (argues that majority holding that dissolution lien may not be avoided in bankruptcy because the lien represents preexisting interest in property is legally unsound in light of the fact that dissolution lien should be treated the same as other judicial liens.). Consequently, under the general rule, Oldewurtel's lien would take priority only from the time it arose in 1986.

The court of appeals acknowledged the validity of this rule but erroneously found an exception based solely on the equitable nature of the dissolution action. None of the parties disputes the general rule. However, Oldewurtel urges this court to follow the court of appeals and find an exception based on equity and the fact that the appellants had actual notice of the dissolution proceedings.

The difficulty with Oldewurtel's argument is that she misconstrues what the appellants had notice of and the significance of that notice. At the time the various security interests were granted, there can be little doubt that appellants had actual notice of the dissolution action. In its findings of fact, the trial court so found and there is ample evidence to sustain that finding. Under the circumstances, it is also quite likely that appellants had actual knowledge of the money judgment granted to Oldewurtel.[3]

---

3. While this notice was not expressly found by the trial court, it can be imputed to both appellants. A corporation can be charged with the knowledge of its officers when the corporation

■ The court of appeals correctly analyzed the notice issue. Under the recording act, a party obtaining an interest in property is protected against prior unrecorded interests so long as the party is a "subsequent purchaser in good faith and for a valuable consideration." Minn.Stat. § 507.34 (1986). In order to be a bona fide purchaser, the purchaser must give consideration without notice of inconsistent outstanding rights of others. *See Anderson v. Graham Investment Co.*, 263 N.W.2d 382, 384 (Minn.1978). As the court of appeals correctly pointed out, both appellants fall within the protection of the recording act. 411 N.W.2d at 236. Notice of the dissolution and notice of the money judgment did not create notice of inconsistent, outstanding rights of others in the subject property. At the time the security interests arose, all Oldewurtel had was an unsecured right to payment. No amount of notice of this would remove appellants from the protection of the recording act.

■ Had the December 5, 1984 judgment been docketed pursuant to Minn.Stat. Section 548.09 (1986), then Oldewurtel would have obtained a lien at least against the farm. However, for reasons which are not apparent from the record, the judgment was not docketed. At oral argument, Oldewurtel's counsel strenuously argued that he was prevented from having the judgment docketed by an appeal stay. However, no actions by the parties or the trial court were stayed pending the appeal after the December 5, 1984 judgment. James Redding, appellant in that case, merely filed a cost bond under Minn.R.Civ.App.P. 107, which does not constitute a stay. We do not address whether the mere mechanical action of docketing the judgment would have been stayed had a supersedeas bond been filed; we merely hold that under

these facts the judgment could have been docketed. Failure to do so meant that no lien arose.[4]

■ Oldewurtel further argues that her lien should take precedence because of appellants' actual notice of her pre-existing property interests. A spouse's property interest vests in marital property not later than the commencement of the dissolution action. Minn.Stat. § 518.54, subd. 5 (1986). The court of appeals found that the dissolution court could use its equitable powers to subordinate appellants' liens because of this notice. The flaw in this analysis is that when the December 5, 1984 judgment was entered, Oldewurtel's property interests were replaced by and reduced to a money judgment. Her undocketed and thus unperfected judgment did not give rise to an interest in the property of which the appellants had notice. *See Pennock*, 395 N.W.2d at 374–75; *see also Boyd*, 741 F.2d at 1115–16 (Ross, J. dissenting). We believe that the rule enunciated in *Pennock* controls this case. Like *Pennock*, the appellants' liens were perfected before Oldewurtel's. In any event, the property subjected to the security interests of the bank and G.A. Redding was adjudicated nonmarital property; therefore, Oldewurtel had no interest in it. Consequently, it was not within the dissolution court's discretion to subordinate appellants' liens.

■ It is apparent that the court of appeals was influenced by what it perceived to be appellants' bad faith. 411 N.W.2d at 236. However, the trial court, contrary to the assertion by the court of appeals, made no finding of bad faith and the record does not support any such finding. Indeed, Oldewurtel's counsel admitted at oral argument that bad faith was not involved in the transactions between appellants and James Redding. Rather, Olde-

consists wholly of those officers and others having notice of inconsistent claims. *See Hunt v. Nevada State Bank,* 285 Minn. 77, 106, 172 N.W. 2d 292, 309 (1969), *cert. denied Burke v. Hunt,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). James Redding and G.A. Redding were both officers of the Windom State Bank at the time of the events that gave rise to the present litigation. In any event, we will assume that all

parties had full knowledge in order to show that such knowledge does not change the result.

4. In addition, the December 5, 1984 Order contains no provision for securing Oldewurtel's award. Had such a provision been made, as it was in the May 28, 1986 Order, Oldewurtel's lien would have arisen against these appellants on that date.

wurtel relies on appellants' notice of the dissolution action to support her claim. The liens which James Redding granted to appellants were supported by valid consideration. Furthermore, the record clearly reflects that James Redding used the proceeds from the loans for entirely valid and legitimate business reasons. The proceeds were used to pay off certain operating and personal loans, a contract for deed on James Redding's homestead and legal bills.

Moreover, as noted above, the farm and the shares of stock which were encumbered by the security interests were awarded to James Redding as nonmarital property. It was entirely his property to dispose of as he saw fit. The lower courts justified their result in part because "[u]ntil the time for appeal had passed and the dissolution became final, the court retained jurisdiction over the entire estate * * *." 411 N.W.2d at 236. The court of appeals reasoned that since the court *could* have changed the property distribution until the time for appeal expired, then anyone who purchased during that time did so at risk even if no change in property division ultimately resulted. However, in *Carl v. DeToffol*, 223 Minn. 24, 30–31, 25 N.W.2d 479, 483 (1946), this court held that a judgment by a trial court is "in full force and effect from the time of its rendition until it [is] reversed" (if at all). The judgment does vest the prevailing party with title, which can be transferred. To be sure, during the pendency of an appeal, the purchaser buys at his own risk that the award might be reversed. "A person whose property is taken under a judgment * * * is entitled to restitution of the property in specie *if the judgment is reversed.*" *Id.* The necessary corollary to this rule is that if not reversed, the transfer of property is not affected by the appeal. It is true that appellants took a risk in the subject transactions. Had the appellate court reversed the property division or the trial court redistributed the assets, the appellants would have lost their security. However, the fact remains that this was not done, and the liens were thus valid.

In sum, it is clear the court of appeals imputed improper motives to appellants in light of their business and family relationship with James Redding. However, this was not supported by the record. In Minnesota, there is no presumption of fraud in business dealings between family members. *Neubauer v. Cloutier*, 265 Minn. 539, 547, 122 N.W.2d 623, 629–30 (1963). The record discloses no fraud.

Lastly, we again note that the money judgment awarded to Oldewurtel in the December 5, 1984 judgment was intended to reflect the value of the shares of stock originally awarded to her. Appellants have no security interest against those shares. Therefore, as against those shares, Oldewurtel's 1986 judicial lien has first priority. Those shares are part of the bankruptcy estate and Oldewurtel is free to satisfy her judgment against them. In addition, appellant G.A. Redding has only $100,000 security interest against the nonmarital shares which were valued in excess of $700,000. The record discloses no other security interests against these shares. Consequently, there should be sufficient equity available to satisfy all lienholders. Of course, it can be surmised that the stock is not worth as much as was found. However, that valuation was put forth by Oldewurtel and her expert, it was accepted by the trial court, and it was upheld on appeal. If, in fact, the stock was worth less than found, it should not fall on appellants to bear the burden.

In sum, we hold that appellants' security interests take priority over Oldewurtel's later granted judgment lien. Consequently, we reverse the court of appeals and order that the trial court enter summary judgment for appellants, granting priority to appellants in the secured properties.

Reversed.

WAHL, Justice, dissenting.

I must respectfully dissent. This case involves more than the simple application of the general rule that the first creditor to perfect a lien in a debtor's property shall prevail in a dispute concerning the satisfac-

tion of a debt through foreclosing a lien on the debtor's property.

In the context of the dissolution proceeding which gave rise to the security transactions and liens here at issue, the trial court determined that the plainitffs—the father of James Redding and the Windom State Bank—were not in the position of a purchaser of good faith as was the bank in *State Bank of Pennock v. Schwenk*, 395 N.W.2d 371 (Minn.App.1986). Rather, the trial court found the bank and the father had been involved in the dissolution from the beginning, and were charged with the same knowledge and responsibility of James Redding himself. They were charged with the knowledge that under Minn.Stat. § 518.58, until the dissolution became final in August 1986, the court could have awarded up to one-half of the non-marital property to Louise Oldewurtel. Because the bank and the father had taken the property in question as security, with that knowledge, the trial court held their lien to be subsequent to the judicial lien implementing the property division. The trial court also held that James Redding, by accepting the quit claim deed to the farm from Louise Oldewurtel, was estopped to deny her lien priority since he could not have gotten a first mortgage on the farm without the quit claim deed.

It was clear to the trial court, and the court of appeals agreed, that it is not the intent of the law that "a party to a dissolution, during the pendency of the dissolution, by perfecting appeals and bankruptcy filings, can maneuver his property through his family and corporations in which he is an officer and director and thereby give preference to them over his wife when the case is finally closed."

The basic rule of lien priority law cannot be properly applied in the context of these facts. Rather, the equitable exception applied by the trial court and court of appeals is required. Louise Oldewurtel could be deprived of her rightful share of marital property if state law were to permit James Redding to assure that his property will go to his father and the family-owned bank rather than to the spouse whose interest in

that property under the statute was turned into a cash award secured by the property.

I would affirm the decision of the court of appeals affirming the decision of the trial court.